His Majesty Kalakaua *et al. v.* G. W. Keaweamahi *et al.*

## SUPREME COURT—IN BANCO.


### JANUARY TERM, 1883—IN EQUITY.

*Judd, C. J., McCully and Austin, J. J.*


HIS MAJESTY KALAKAUA AND HER MAJESTY KAPIOLANI *vs.* G. W. KEAWEAMAHI ET AL.


HEARD BY FULL COURT BY CONSENT.

THE DEFENDANTS demurred to the bill on the ground of laches, and that the Statute of Limitations was shown to have run.

The bill claimed relief for fraud committed by W. L. Moehonua, the ancestor of the defendants, on the plaintiffs' grantee in September, 1851, by inserting in certain portions of a Land Commission award the name of said Moehonua, so that the same appeared to be an award to Moehonua, though in fact intended to be made to or for Moehonua's wife, the ancestor of the plaintiffs' grantee. And the plaintiffs claim that the Statute of Limitations, which might otherwise have run, did not run because Moehonua was administrator of his wife's estate, and thereby her trustee in possession of the land claimed in the bill, and that there was no lache because of the fraud.

HELD, that Moehonua was not a trustee, and that the plaintiffs cannot recover because of laches, and because the statute has run, which facts appear in the bill.

Opinion of the Court by AUSTIN, J.

The question in this case comes before the full Court by consent on a demurrer to the bill of complaint.

The bill alleges in substance that the defendants, except D. K. Fyfe, are the heirs at law of William L. Moehonua, late of Honolulu, deceased; that in the year 1848 or thereabouts the said Moehonua married one Kaunuohua, who died intestate without issue in 1849; that letters of administration were issued upon her estate to said W. L. Moehonua on the 13th day of March, 1852; that said Moehonua died in September, 1878, never having filed any accounts as such administrator, and never having been discharged from said trust.

That said Kaunuohua was seized and possessed in her lifetime of the tracts of land in the bill described by virtue of the mahele between His late Majesty Kamehameha III. and the chiefs in the year 1848; that said Kaunuohua, in her lifetime, filed her petition before the Land Commission, praying that her title in said lands be confirmed by an award; that after her death an award was issued upon her said petition being No. 6,450, a copy of which is filed and made part of the said bill of complaint; that three royal patents have been issued upon portions of said premises which are de-

scribed in the said bill, being the same numbered 2,509, 6,846, and 7,168, copies of which are filed and made part of the said bill of complaint; that the words "no W. L. Moehonua" were fraudulently and erroneously inserted after the name of said Kaunuohua in certain portions of said award referring to said lands described in the bill, but not in other parts of said award.

And the plaintiffs allege that the plaintiff Her Majesty Kapiolani is the grantee, and now holds all the title of Kahanaauwai Kanoa in and to the lands described in said bill, and at the time of said grant the grantor was the sole surviving heir at law of said Kaunuohua.

That the defendants, except D. K. Fyfe, falsely pretend that they are entitled under said award to possession of said lands which they hold and retain as heirs of said W. L. Moehonua, deceased; whereas the plaintiffs charge that said W. L. Moehonua was not a party in interest before said Land Commission, and offered no evidence before them in support of any claim of title on his part, and that the words "no W. L. Moehonua," where they occur in said award, were fraudulently and erroneously inserted without right, and confer no title; wherefore the plaintiffs ask relief in accordance with their allegations.

The defendants demur and aver in substance that the bill entitles the plaintiffs to no relief; that they cannot recover because of laches and want of diligence in presenting their claim, and that the Statute of Limitations has run upon the plaintiffs' claim.

The award which concerns the land described in the bill bears date September 17, 1851. Kaunuohua died in the year 1849. Under the Statute of 1846, p. 58, Section 3, Moehonua, at the time of her death, had possession of all her lands as her husband. When appointed administrator of the estate of his wife Kaunuohua on the 13th of March, 1852, there was an award in his favor for the lands in the complaint

described, bearing date September 17, 1851.   This was equivalent to a judgment in his favor.

See Bishop *vs.* Namakalaa and Kahinukawa, 2d Haw. Rep., p. 238-9-40 ; Kekiekie *vs.* Dennis, 1st Haw. Rep., p. 43 ; Kukiiahu *vs.* Gill, 1st Haw. Rep., p. 54 ; Kane *vs.* Perry, 3d Haw. Rep., p. 663 ; Kalaeokekoi *vs.* Kahanu, October Term, 1882.

The plaintiffs' counsel, however, argues that there was not an adjudication in favor of Moehonua at all, because he was not a claimant before the Land Commission, and no evidence was offered in his favor.   The bill alleges that Kaunuohua filed a petition in her lifetime praying that her title in said lands be confirmed by an award ; that after her death said award 6,450 was issued on her said petition.   It is not stated that any new proof was taken after her death, and yet the situation of the property was changed.   We are not to assume after this lapse of time that the Land Commission had no authority for issuing the award they actually did issue.   It was undoubtedly an award in favor of Moehonua.   The failure to record evidence to sustain it does not vitiate it, although if the question were opened it would be provable against it.   Moehonua is dead ; if here he might be able to explain it.

The plaintiffs claim that, by the appointment of Moehonua as administrator of his wife's estate, he became trustee of her lands for her heirs, and never relinquished the trust, and that therefore his possession up to the time of his death was not adverse to her heir, the plaintiff's grantor.   If this were so as to lands left by her it is plain, we think, that by taking administration he did not intend to acknowledge any land to belong to his wife's heirs which was then awarded to himself.

A possession to be adverse must be under a claim of title against all the world.   See Kaaihue *et al. vs.* Crabbe and husband, 3d Haw. Rep., pp. 768-74—opinion of Judd, J.

We think the award and Moehonua's possession under it constituted an adverse possession as against the heirs of Kau-

nuohua. The bill shows Moehonua's possession to have continued from the death of his wife to his own death, more than thirty years after. Possession adversely commenced is presumed to continue adverse so long as maintained. Bogardus *vs.* Trinity Church, 4 Sand. Ch. R., pp. 633, 733 ; 1 Greenleaf's Ev., Section 41.

The plaintiffs claim that after Moehonua became administrator his possession was not averse.

Upon this point Perry on Trusts, Volume 2 Section 864, says: "If a trustee repudiates the trust by clear and unequivocal acts or words, and claims the estate as his own, and such repudiation and claim are brought home to the notice or knowledge of the *cestui que trust* the statute runs. See also Washburn on Real Property, Volume 2, p. 493.

We think the case at bar is stronger than this. Moehonua, as we have said, appears by the bill to have never admitted a trust as to the lands in the complaint described. The award constituted an open and constant repudiation of any trust. We think it is notice to the plaintiffs' grantor, and to those under whom she claimed, that he claimed the possession as owner.

The plaintiffs further claim that Moehonua's possession was never adverse because of fraud and error in the award as alleged.

We think this is not so. We believe the law to be well settled, that the circumstance that the title claimed was void or commenced in fraud of law, does not detract from the force of adverse possession commenced under it.

See Harpending *vs.* The Reformed Protestant Church, 16 Peters' R., 455; Bogardus *vs.* Trinity Church, 4 Sand Ch. R. 533, 738, above cited.

The plaintiffs further claim that the Statute of Limitations cannot be taken advantage of on demurrer. We still think the plaintiffs err in this law.

Story in his equity pleadings says that the Statute of Limitations may be taken advantage of by demurrer in equity as at law, when it appears on the face of the bill, Section 503, n.

4, Sections 484, 751. He further says: "The policy of the law is to give quiet and repose to titles. After great lapse of time and long peaceable possession Equity Courts ought not to interfere."

Id. 813, see also Story's Eq. Jur., Section 1,520.

We think all the facts requisite to establish thirty years adverse possession in Moehonua and his heirs appear on the face of the bill.

The plaintiffs' counsel cites with confidence Bishop *vs.* Namakalaa, and another, 2d Haw. Rep., p. 238, as an authority allowing this bill to correct the award. In that case the award was issued February 10, 1851, and the royal patent on it was May 14, 1851, and the suit was decided March 26, 1860, only nine years after the award.

The Court will not allow evidence of adverse possession prior to the award, and that it is not pretended that any arose since.

See Kanaina *vs.* Long, 3d Haw. Rep.; p. 332. The language quoted indicates that if the proofs had been as here the defense would have prevailed.

But the plaintiffs' counsel urges that where fraud is averred, as in this case, the statute does not begin to run until the discovery of the fraud, and that the bill does not allege the time of the discovery, so the full time of the statute may not have run. In many countries the Statute of Limitations is enlarged in cases of fraud. In England the statute begins to run in cases of concealed fraud from the time when, with reasonable diligence, the fraud might have been discovered.

Story's Equity Jurisprudence, Section 1,521 A, n. 2. In our Statute of Limitations there is no such enlargement of the time. The limitation is twenty years. No disability of of Kaunaohua's heirs is alleged in the bill, and therefore none is presumed to exist.

It is said they were females, and that the family relationship of the parties, and the unwillingness to have a contention

with the husband Moehonua, who was a petty chief, and Hawaiian customs must be taken into account in explaining the delay to bring suit. This argument assumes knowledge of the fraud, if any, and would be properly provable in extenuation of delay if the statute had not run, but not now.

We think, as we have said, that the heirs of Moehonua must be presumed from the facts alleged in the bill to have had knowledge of the nature of the award from the time it was made.

His continued possession of the lands after the death of his wife was notice of the nature of his claim ; that possession was never questioned in his lifetime, and ought not to have been questioned now. See Perry on Trusts, Section 228, volume 1.

The Statute of Limitations fully ran long since. We have examined all the authorities cited by the plaintiffs' counsel, and, under the laws of this Kingdom, we think the plaintiffs' action cannot be maintained.

The demurrer is sustained, with leave, however, to the plaintiffs to amend the bill in ten days from the date of this decision ; and if they do not so amend, then let judgment absolute for the defendants be entered, with costs.

Hon. E. Preston and Mr. Hatch for plaintiffs.

J. M. Davidson for defendants.

Honolulu, January 12, 1883.