IN THE MATTER OF THE DETERMINATION AND DECLARATION OF THE HEIRS OF ANE ELLEN (HANNAH) KEAMO, ALSO KNOWN AS ANNIE A. KEAMO, ALSO KNOWN AS ANNIE AFOOK KEAMO, ALSO KNOWN AS ANNIE KAI FOOK, ALSO KNOWN AS ANNIE TAM FOOK, DECEASED

NO. 8067

(SPECIAL PROCEEDINGS NO. 319)

SEPTEMBER 14, 1982

BURNS, C.J., HEEN AND TANAKA, JJ.

OPINION OF THE COURT BY TANAKA, J.

In the proceedings below, brought to determine the heirs of Ane Ellen "Hannah" Keamo (Keamo), deceased, the court not only determined her heirs, but also quieted title to Keamo's fractional interests in real property. Petitioners-appellants Delfin M. Ortiz, Jr. (Delfin) and Jocelyn Ortiz Will (Jocelyn) appeal that part of the August 11, 1980 judgment and order which held that respondents-appellees Dorothy Tam Moi Luke (Dorothy) and Gladys Tam Holt

(Gladys) acquired absolute title in Keamo's real property interests by adverse possession as against appellants.

The sole issue on appeal is whether the court's conclusion on adverse possession was erroneous. Our answer is yes, and we reverse.

Keamo married Kai Fook, also known as (aka) Tam Kai Fook, Ki Fook, Gai Fook, Tam Fook, Tam Ah Fook, Tam Gai Fook and Ah Fook Tam (Tam), on July 19, 1901. From this marriage, Dorothy was born on May 25, 1905, and Gladys, on February 18, 1908.

Shortly after the birth of Gladys, Keamo deserted Tam and began living with William Keamo (William). On September 22, 1909, Keamo gave birth to Priscilla Tam, aka Priscilla Kuaiaina (Priscilla).

On March 13, 1911, Tam filed for divorce from Keamo. The decree issued on August 2, 1911 granted Tam a divorce and gave him custody of Dorothy and Gladys. Neither the libel nor the decree of divorce mentioned Priscilla or a third child.

Keamo married William on August 21, 1911. Priscilla was given "hanai" (meaning informal adoption) to Pilikila Kuaiaina, but Edith Gomes, aka Edith Machado, and Edith Cervantes (daughter of Pilikila Kuaiaina) took care of her primarily.

Priscilla married Delfin Mathias Ortiz, Sr. (Ortiz) on July 29, 1927. Jocelyn was born to Priscilla on October 14, 1928, and Delfin, on October 29, 1929.

On July 11, 1931, Priscilla died. Ortiz died on October 16, 1932. After their deaths, Jocelyn was raised (hanai) by Edith Cervantes. Delfin was raised by Leonilla Enabore.

On December 29, 1941, William died. His estate was administered in probate court, and one-half of the net assets of his estate was distributed to Keamo.

On April 17, 1947, Keamo died intestate. At the time of her death, Keamo owned undivided interests in real property as follows:

| TAX MAP KEY NO. | AREA | UNDIVIDED INTEREST |
|---|---|---|
| 2-1-04-25 | 5.0 acres | 1/2 |
| 2-1-04-26 | 13.0 acres | 18/98[1] |
| 2-1-04-32 | 43.37 acres | 1/2 |
| 2-1-04-33 | 12.90 acres | 18/96 |
| 2-1-04-43 | .20 acre | 1/2 |

---

[1] Finding of Fact No. 16 specifies the undivided interest in Tax Map Key No.

The foregoing real property interests are hereinafter referred to as the "property."

Keamo's estate was administered in a small estate proceeding (S.E. 54) in the Second Circuit Court, Territory of Hawaii. The order entered on July 27, 1949 (1949 Order) found and declared that Keamo's heirs were Dorothy and Gladys.

On October 25, 1977, Delfin filed a petition for a decree determining and declaring the heirs of Keamo. The petition alleged that Delfin and Jocelyn were grandchildren of Keamo, and that the 1949 Order was in error. Jocelyn joined in the petition.

After a bench trial, the court entered its findings of fact and conclusions of law on October 11, 1979. The judgment and order was entered on August 11, 1980.

## I.

We first confront appellees' claims on appeal (1) that the 1949 Order was res judicata, (2) that appellants failed to meet the burden of proof as to their title to the property, and (3) that the trial court was without jurisdiction to hear the matter involving title to the property.

## A.

For the first time on appeal, appellees argue that the 1949 Order is res judicata as to appellants' claims in this action. Res judicata is an affirmative defense which must be pleaded in the court below. Rule 8(c), Hawaii Rules of Civil Procedure (1980) (HRCP). Appellees having failed to do so, we will not consider this matter for the first time on appeal. *Exxon Corp. v. Texas Motor Exchange of Houston,* 628 F.2d 500 (5th Cir. 1980); *Santos v. Alaska Bar Ass'n.,* 618 F.2d 575 (9th Cir. 1980) (failure to raise below is a waiver).

## B.

Appellees contend that appellants failed to prove by a preponderance of the evidence their claim to one-third of the property.

---

2-1-04-26 to be 18/98. This may be a typographical error. The admitted facts in both appellants' and appellees' pre-trial statements list such undivided interest to be 18/96.

This contention does not merit any consideration by us. Appellees failed to file a notice of appeal as required by Rule 73(a), HRCP (1980, as amended). *Orso v. City & County,* 56 Haw. 241, 534 P.2d 489 (1975). *But cf. In re Estate of Lorenzo,* 61 Haw. 236, 239, 602 P.2d 521, 525 (1979) (a "subsidiary question underlying the other issues raised by appellant" may be considered); *Shoemaker v. Takai,* 57 Haw. 599, 607, 561 P.2d 1286, 1291 (1977) ("no cross appeal is necessary in order that an appellate court may review a question closely related, in substance, to a question raised by the appeal").

## C.

Again, for the first time on appeal, appellees argue that the trial court lacked subject matter jurisdiction concerning title to the property.

Ordinarily a judgment will not be reversed on a legal theory not raised in the court below. An appellate court will deviate from this rule only when justice requires. *Earl M. Jorgensen Co. v. Mark Constr., Inc.,* 56 Haw. 466, 540 P.2d 978 (1975); *In re Taxes, Hawaiian Land Co.,* 53 Haw. 45, 487 P.2d 1070 (1971) *appeal dismissed,* 405 U.S. 907 (1972), *reh'g denied,* 405 U.S. 1048 (1972); *Cabral v. McBryde Sugar Co., Ltd.,* 3 Haw. App. 223, 647 P.2d 1232 (1982).

A court may properly render a judgment only if it has authority to adjudicate the type of controversy involved in the action. RESTATEMENT (SECOND) OF JUDGMENTS § 11 (1982). And a judgment of a court without jurisdiction over the subject matter is suspect as to its validity.[2] Thus, justice compels us to address the issue of the trial court's jurisdiction.

Appellees argue that appellants' petition for determination and declaration of heirs invoked the jurisdiction of the court under Hawaii Revised Statutes (HRS) § 603-21.7(a)(1) (1976);[3] that under §

---

[2] Such judgment may be void or voidable and subject to collateral attack. *See* RESTATEMENT (SECOND) OF JUDGMENTS § 12 (1982); Note, *Filling the Void: Judicial Power and Jurisdictional Attacks on Judgments,* 87 YALE L.J. 164 (1977).

[3] HRS § 603-21.7 reads in its entirety as follows:
§ 603-21.7 *Nonjury cases.* The several circuit courts shall have jurisdiction, without the intervention of a jury except as provided by statute, as follows:
(a) Of actions or proceedings:
(1) For the determination and declaration of heirs of deceased persons,

603-21.7(a)(1) the court had no authority to determine disputes involving real property claims; and that appellants should have filed an action under HRS § 669-1.[4] We disagree.

HRS § 603-21.5 (1976) provides in part:

> The several circuit courts shall have jurisdiction, except as otherwise expressly provided by statute, of:

> \* \* \* \* \*

> (3) Civil actions and proceedings, in addition to those listed in sections 603-21.6,[5] 603-21.7,[6] and 603-21.8.[7][footnotes added]

---

which jurisdiction shall be in addition to the probate jurisdiction of the court;

(2) For the admeasurement of dower and curtesy, or the partition of real estate;

(3) For enforcing and regulating the execution of trusts, whether the trusts relate to real or personal estate, for the foreclosure of mortgages, for the specific performance of contracts, and except when a different provision is made they shall have original and exclusive jurisdiction of all other cases in the nature of suits in equity, according to the usages and principles of courts of equity;

(b) Of actions or proceedings in or in the nature of habeas corpus, prohibition, mandamus, quo warranto, and all other proceedings in or in the nature of applications for writs directed to courts of inferior jurisdiction, to corporations and individuals, as may be necessary to the furtherance of justice and the regular execution of the law.

[4] On October 25, 1977 when the petition was filed in this case, HRS § 669-1 read as follows:

§ 669-1 *Object of action.* (a) Action may be brought by any person against another person who claims, or who may claim adversely to the plaintiff, an estate or interest in real property, for the purpose of determining the adverse claim.

(b) Action for the purpose of establishing title to real property may be brought by any person who has been in adverse possession of the real property for not less than twenty years.

(c) Action under subsection (a) or (b) shall be brought in the circuit court of the circuit in which the property is situated.

HRS § 669-1 was amended in 1979.

[5] HRS § 603-21.6 deals with probate jurisdiction and reads:

§ 603-21.6 *Probate.* The several circuit courts shall have power to grant probate of wills, to appoint personal representatives, to determine the heirs at law or devisees of deceased persons and to decree the distribution of decedents' estates, to appoint guardians of the property, to compel personal representatives and such guardians to perform their respective trusts and to account in all respects for the discharge of their official duties, to remove any personal representative or any such guardian and to do all other things as provided in chapter 560.

[6] See note 3, *supra.*

[7] HRS § 603-21.8 covers appellate jurisdiction of the circuit courts and reads as

Our supreme court, in *Sherman v. Sawyer,* 63 Haw. 55, 621 P.2d 346 (1980), stated:

> The circuit courts are courts of general jurisdiction. *State v. Villados,* 55 Haw. 394, 397, 520 P.2d 427, 430 (1974). We defined jurisdiction as "the power and authority on the part of the court to hear and judicially determine and dispose of the cause pending before it." *Id.* at 396, 520 P.2d at 430. HRS § 603-21.5 gives the circuit court subject matter jurisdiction over civil actions and proceedings. Thus, the circuit court has jurisdiction over all civil causes of action unless precluded by the State Constitution or by statute.

*Id.* at 57-58, 621 P.2d at 348-49.

HRS § 669-1(c) confers on the circuit court jurisdiction over a quiet title action, the venue being in the circuit in which the property is located. An action to quiet title is a § 603-21.5 civil action or proceeding. We hold that under the broad statutory language of § 603-21.5, the court below had jurisdiction to adjudicate both a § 603-21.7(a)(1) determination and declaration of heirs matter and a § 669-1 quiet title claim. *See Sherman v. Sawyer, supra; McClung v. Fukushima,* 53 Haw. 295, 492 P.2d 128 (1972).

In reality, the alleged jurisdictional problem is of appellees' creation. No reasonable person commences an action for determination and declaration of heirs of a deceased as an academic exercise. Such action is generally commenced to determine heirship for the purpose of resolving ownership of real estate owned by a person dying intestate. Appellants did this by filing the petition on October 25, 1977. They sought to establish the fact that they were grandchildren of Keamo through Priscilla and thereby entitled to a one-third ownership of the property. During the course of the proceedings, appellees interjected the principle of adverse possession to divest appellants of their one-third share in the property. We cannot commiserate with their now complaining that the court below lacked jurisdiction.

Appellants argue that the proceeding to quiet title is an *in per-*

follows:
> § 603-21.8 *Appeals.* The several circuit courts shall have jurisdiction of all causes that may properly come before them on any appeal allowed by law from any other court or agency.

*sonam* action,[8] and that Dorothy was never personally served in the case. The argument has no merit. The records clearly show that both Dorothy and Gladys jointly filed an answer in the case, were ably represented by counsel and prevailed on the adverse possession question.

## II.

Appellees and appellants were cotenants of the property. There was no dispute that appellees Dorothy and Gladys were daughters of Keamo. The trial court found that appellants Delfin and Jocelyn were the grandchildren of Keamo through Priscilla, Keamo's deceased daughter. By virtue of Section 12070, Revised Laws of Hawaii 1945,[9] in effect at the time of Keamo's death, Dorothy and Gladys, as owners of an undivided one-third interest each, and Delphin and Jocelyn, as owners of an undivided one-sixth interest each, were tenants in common of the property.

Since *Nahinai v. Lai*, 3 Haw. 317 (1871), it has been recognized in this jurisdiction that a cotenant may acquire title to the interest of his cotenant by adverse possession. *Yin v. Midkiff*, 52 Haw. 537, 481 P.2d 109 (1971); *Kaahanui v. Kaohi*, 24 Haw. 361 (1918). Our supreme court has held that "a cotenant relying upon a claim of adverse possession has the burden to show the following essential requirements in order to acquire exclusive title as against the ones out of possession: (1) a clear intent to claim adversely; (2) adverse possession in fact; and (3) knowledge or notice of the hostile holding

---

[8] *See Re Complaint of Vockrodt,* 50 Haw. 201, 436 P.2d 752 (1968).

[9] In 1947, Section 12070, Revised Laws of Hawaii 1945, read as follows:

Whenever any person shall die intestate, his property, both real and personal, of every kind and description, shall, except as otherwise provided, descend to and be divided among his heirs, as in this chapter [291] prescribed.

The pertinent part of chapter 291 provided:

Sec. 12073. *General rules of descent.* 1. *Issue, lineal descendants.* The property shall be divided equally among the intestate's children, and the issue of any deceased child by right of representation, and if there is no child of the intestate living at his death, his estate shall descend to all his other lineal descendants; and if all such descendants are in the same degree of kindred to the intestate, they shall share the estate per capita, that is equally; otherwise, they shall inherit per stirpes, that is, by each of the children taking a share, and the grandchildren, the children of a deceased child taking a share, to be afterwards divided among themselves.

brought home to the cotenant or cotenants out of possession." *Yin, supra,* 52 Haw. at 540, 481 P.2d at 111.

In a case involving adverse possession, the burden of proof is on the party claiming such possession. *Lai v. Kukahiko,* 58 Haw. 362, 569 P.2d 352 (1977); *Smith v. Hamakua Mill Co.,* 15 Haw. 648 (1904). However, "whenever the parties to the action are cotenants and closely related by ties of blood, the burden of the cotenant claiming adversely is intensified." *Yin, supra,* 52 Haw. at 540, 481 P.2d at 111-12.

Our supreme court has formulated a test as to the notice requirement applicable in the resolution of adverse possession claims between cotenants. In *City & County of Honolulu v. Bennett,* 57 Haw. 195, 552 P.2d 1380 (1976), it stated:

> Following in the line of *Yin* and *Poka,* we lay down in this case the rule that, because of the general fiduciary relationship between cotenants, a tenant in common claiming by adverse possession must prove that he acted in *good faith* towards the cotenants during the statutory period. In most circumstances, this requirement of good faith will in turn mandate that the tenant claiming adversely must *actually notify* his cotenants that he is claiming against them. In the following exceptional circumstances, however, good faith is satisfied by less than actual notice: where the tenant in possession has *no reason to suspect* that a cotenancy exists; or where the tenant in possession makes a *good faith, reasonable effort to notify* the cotenants but is unable to locate them; or where the tenants out of possession already have *actual knowledge* that the tenant in possession is claiming adversely to their interests. In these limited circumstances, the notice requirement will be satisfied by constructive notice and "open and notorious possession."

*Id.* at 209-210, 552 P.2d at 1390 (emphasis in original).

In applying the *Bennett* test, we find that this case falls within the "limited circumstances" category. Appellees had "no reason to suspect" that cotenants Delfin and Jocelyn existed, and the court so found.[10]

---

[10] Finding of Fact No. 21 states:

21. Until the proceeding herein, Dorothy and Gladys had no knowledge that they had another sister born to their mother Annie [Keamo] and had no reason to believe that there were other heirs claiming under their mother Annie.

Proceeding further with the *Bennett* test, we will assume that the 1949 Order was constructive notice to appellants and the world that appellees were claiming adversely. *Kalakaua v. Keaweamahi,* 4 Haw. 577 (1883). However, appellees failed to meet their burden of proving "open and notorious possession" for the statutory period.

The evidence to support appellees' adverse possession claim is very skimpy. The only witness testifying on this matter was Gladys. Her testimony was that after the 1949 Order she "tried to continue to get it [the property] rented"; she "tried to rent it out but there was confusion and trouble"; she paid the real property taxes probably from 1950; she visited the property a total of three times since 1949; the property was leased to Ulupalakua Ranch, Inc. in August 1966; and it was still being leased to the same lessee.

The documentary evidence consisted of (1) real property assessment notices for the property for 1977 addressed to Gladys and (2) the unrecorded Memorandum of Lease dated August 13, 1966 between Dorothy and Gladys, as lessors, and Ulupalakua Ranch, Inc., as lessee. The lease was for pasture purposes and the term was for "one year from the date hereof and from year to year thereafter unless terminated by any of the parties hereto by thirty (30) days written notice." The stipulated rent was $120.00 per annum. The lessee was to pay all real property taxes. The lease demised all of the property, except Tax Map Key No. 2-1-04-43.

The evidence is insufficient to prove "open and notorious possession" by appellees prior to August 13, 1966. "In disputes between cotenants, the presumption is that a cotenant in possession does not occupy the premises adversely to his cotenants but in common with them." *Redfearn v. Kuhia,* 53 Haw. 378, 381, 494 P.2d 562, 564 (1972). "This presumption may be overcome only by conduct of one cotenant which constitutes an ouster or disseisin of the other cotenants." *Id.* at 381, 494 P.2d at 564.

Appellees failed to overcome such presumption. Payment of real property taxes in itself does not establish adverse possession. It is one of the factors to be considered. *Okuna v. Nakahuna,* 60 Haw. 650, 594 P.2d 128 (1979); *Lai v. Kukahiko, supra; Deponte v. Ulupalakua Ranch,* 48 Haw. 17, 395 P.2d 273 (1964). Three visits to the property since 1949 by Gladys cannot constitute "open and notorious" or "continuous" possession. In *Okuna v. Nakahuna, supra,* our supreme court stated, "Infrequent visits to the property to pick and gather fruits

can hardly be said to constitute continuous possession or even possession at all." *Id.* at 656-57, 594 P.2d at 132.

At best, the evidence showed "open and notorious possession" by appellees commencing from August 13, 1966, the date of the Ulupalakua Ranch lease. The possession by their lessee inured to the benefit of appellees in their adverse possession claim. *Kainea v. Kreuger,* 31 Haw. 108 (1929). According to Gladys, the lease was still in effect at the time of her testimony.

Appellees were not in "open and notorious possession" of the property, however, for the statutory period of twenty years.[11] Their assertion of the adverse possession claim came within twenty years after the right first accrued on August 13, 1966.[12] The period of slightly more than eleven years was insufficient for appellees to perfect title to the property by adverse possession against appellants. *Re Land Title, State of Hawaii,* 49 Haw. 537, 425 P.2d 83 (1967), *reh'g denied,* 49 Haw. 575 (1967).

Accordingly, we hold that the trial court was clearly erroneous in concluding that appellees acquired absolute fee title to the property by adverse possession against appellants.[13]

Reversed and remanded with direction that the findings of fact and conclusions of law entered on October 11, 1979 and the judg-

---

[11] HRS § 657-31 reads:

No person shall commence an action to recover possession of any lands, or make any entry thereon, unless within twenty years after the right to bring the action first accrued.

*See also* HRS § 669-1(b), *supra,* note 4.

[12] HRS § 657-33 reads in part as follows:

In the construction of this part, the right to make an entry or commence an action, shall be deemed to have first accrued at the following times:

(1) When any person is disseised, his right of entry or action shall be deemed to have accrued at the time of disseisin.

\* \* \* \* \*

HRS § 657-33(2) provides that when a person "claims as heir or devisee of one who died seised, his right shall be deemed to have accrued at the time of the death . . . ." However, HRS § 657-33(2) "should be read as referring to the earliest time when the period could begin to run, rather than when the period must begin to run." Steadman, *The Statutory Elements of Hawaii's Adverse Possession Law,* 14 HBJ 67, 73-74 (1978). *See McAulton v. Smart,* 54 Haw. 488, 510 P.2d 93 (1973).

[13] Conclusion of Law No. 25.

ment and order entered on August 11, 1980 be amended to be consistent with this opinion.

*Michael J. Makibe (Frank D. J. Kim* on brief) for petitioners-appellants.

*Michael A. Tongg* and *Tenney Z. Tongg* on brief for respondents-appellees.