Maria Atalig **Apatang**,
Plaintiff/Appellant,

**v.**

Rudolfo **Mundo**,
Defendant/Appellee.
Appeal No. 92-025
Civil Action No. 90-0836
February 22, 1994

---

Argued and Submitted October 7, 1993

Counsel for appellant: Juan T. Lizama, Saipan.

Counsel for appellee: Antonio M. Atalig, Saipan.

BEFORE: DELA CRUZ, Chief Justice, VILLA-GOMEZ, Justice, and BELLAS, Special Judge.

DELA CRUZ, Chief Justice:

The plaintiff, Maria Atalig Apatang ("Maria"), as the administratrix of the estate of Juan L. Atalig ("Juan"), appeals from an adverse judgment entered in a land ownership dispute. The trial court found that defendant Rudolfo Mundo ("Mundo") acquired ownership of the subject land located in Teteto, Rota, both by purchase and by adverse possession. For the reasons given below, we affirm the judgment in part and reverse it in part.

## I. FACTS

On September 2, 1958, the Trust Territory government issued land title Determination of Ownership 154 in the name of Juan's heirs for the land which is the subject of this lawsuit (the "Mahanmag property"). Each heir acquired an equal undivided interest. Juan died intestate in 1952 or 1953. His surviving children are Jose, Martin, Angel and Joaquin Atalig, Ana Masga and Maria Apatang.

In 1965, Mundo, who was Juan's cousin, offered to purchase Angel's interest in the Mahanmag property for "a cow or cows." There was conflicting evidence at trial on whether Angel accepted the offer. Angel testified that he agreed to "lease" the land to Mundo for three cows. In contrast, Maria's husband, Manuel, testified that Angel accepted the offer to sell.

In 1965, Maria delivered to Mundo the original of the determination of ownership for the property. She did

so, according to her testimony, because Mundo had purchased "Angel's share of the property."

Thereafter, Mundo farmed and partially fenced the Mahanmag property. Angel testified at trial that Mundo never delivered the cows to him. However, Mundo's son Jose disputed this testimony. He stated that a "toru" (bull) was delivered to Angel's brother-in-law Manuel in Rota as "payment for the property."

Joaquin, Jose and Martin each testified that they refused to sell their interest in the land to Mundo. Ana did not recall ever being asked to sell her interest in the land. The record does not establish whether Maria was also asked to sell her interest in the Mahanmag property to Mundo.

On May 29, 1975, Mundo filed a claim of ownership to the property with the Rota Land Commission. Maria, on behalf of the heirs of Juan L. Atalig, filed a competing claim. Less than a month later, on June 26, 1975, a request for survey was prepared, but not signed, by the "Chairman of the Rota Land Registration Team." On the bottom of the document the following was written in Chamorro: "This land was purchased by Rudolfo A. Mundo with the understanding/permission of Angel Atalig." No administrative resolution of this land dispute ever took place.

The appellant acknowledges that Mundo "used the land for more than twenty five (25) years." Opening Brief of Appellant at 7.

The trial court found that the Mahanmag property was owned by "the children of Juan L. Atalig." It also found that Angel sold his interest in the land to Mundo for a "cow or cows." And, as to the other children, Mundo acquired the land by adverse possession because Mundo was in "actual, open, visible, notorious, continuous and ho[s]tile possession of the Mahanmag property" since 1965. *Apatang v. Mundo*, Civ. No. 90-0836 (N.M.I. Super. Ct. Aug. 25, 1992) (Decision and Order at 5-6).

This appeal followed.

## II. ISSUES AND STANDARD OF REVIEW

■ Maria raises two issues for our review:

1. Whether Angel sold his co-tenancy interest in the Mahanmag property to Mundo. This issue implicates the propriety of the trial court's findings of fact. We therefore review for clear error. 1 CMC § 3103; Com. R. Civ. P. 52(a); *Rogolofoi v. Guerrero*, 2 N.M.I. 468, 476 (1992).

2. Whether Mundo acquired title to the entire property by adverse possession. This issue presents a mixed question of law and fact, and our review is de novo. *Cabrera v. Cabrera*, 3 N.M.I. 1, 4 (1992).

## III. ANALYSIS

The appellant first contends that the court erred in awarding Angel's individual ownership interest in the land to Mundo. She claims that Angel never agreed to sell the subject lot to Mundo, but agreed only to "lease" or "use" it. In exchange, Mundo was to give him three cows. Angel also testified that he never received any cow or cows from Mundo. Thus, Mundo's claim should be rejected because he failed to satisfy their agreement. The trial court disagreed and found that Angel sold his co-tenancy interest to Mundo for a "cow or cows." Implicit in this finding is that Mundo delivered the cows to Manuel as payment to Angel.

■ We will not disturb the trial court's findings of fact unless we find clear error. 1 CMC § 3103; Com. R. Civ. P. 52(a); *Rogolofoi*, 2 N.M.I. at 476. The trial court was presented with evidence, albeit conflicting, from which it could reasonably conclude that there was (1) an offer by Mundo to purchase the land, (2) acceptance by Angel of that offer and (3) the furnishing of consideration by Mundo, i.e., a toru delivered as payment for the land. Mundo's use of the land since 1965 supports the trial court's conclusion that the agreement was consummated.

In reviewing the record, we are not left with the "firm and definite conviction that the trial court committed a mistake." *Rogolofoi*, 2 N.M.I. at 476. The contrary is true: the record supports the ultimate conclusion that Angel sold his interest in the land for the toru. The trial court's factual findings are not clearly erroneous on this issue. Therefore, its findings and conclusions on this point shall stand.

The appellant's second contention is that the trial court erred in concluding that Mundo acquired the ownership interests of Juan's other heirs by adverse possession. Our analysis of this issue entails examining the ownership interest of Juan's heirs after his death.

■ Juan's heirs inherited the Mahanmag property as tenants in common. *See Manglona v. Kaipat*, 3 N.M.I. 322, 332 (1992); *Johns v. Scobie*, 86 P.2d 820, 822 (Cal. 1939) ("In the present case the heirs . . . were entitled to equal shares under the laws of succession, and therefore took title as tenants in common"); 20 Am. Jur. 2d *Cotenancy and Joint Ownership* § 27 ("it is now the general rule that when an owner of real property dies intestate, his heirs take as tenants in common"). By acquiring Angel's undivided interest, Mundo became a cotenant with the other heirs with respect to the property.

■ A tenancy in common "is characterized by possession or *the right to possession* of the common property. *Osborn v. Warner*, 694 P.2d 730, 733 (Wyo. 1985) (emphasis added); *see also Scobie*, 86 P.2d 822-23. In an adverse possession case, the party in possession has the burden of establishing title. *In re Keamo*, 650 P.2d 1365, 1371 (Haw. Ct. App. 1982). Where the parties are related by blood, as here, the burden is "intensified." *See id.*; *Rosario v. Pelep*, 8 TTR 337, 344 (App. Div. 1983).

■ We agree with and adopt the Hawaii Supreme Court's articulation as to the burden a party must satisfy in order to claim title by adverse possession against a cotenant. The claimant must show: (1) "a clear intent to claim adversely;" (2) adverse possession "in fact"; and (3) "knowledge or notice of the hostile holding brought home to the cotenant or cotenants out of possession." *Waimea Falls Park, Inc. v. Brown*, 712 P.2d 1136, 1141 (Haw. Ct. App. 1985); *Keamo*, 650 P.2d at 1371.

■ Hawaii recognizes the "fiduciary" nature of the relationship between tenants in common. *Id.* Thus, the one claiming prescriptive title must "prove" he acted in "good faith" towards the others. *Id.* "Actual notice" that one is claiming against his or her cotenants also is required. *Id.* Constructive notice may suffice, but under limited factual circumstances not presented here. *See id.*

■ When Mundo purchased Angel's interest in the land he became a tenant in common with Juan's other heirs. As a tenant in common, Mundo had a legal right to occupy and use the land. The record establishes that each of Juan's heirs whom Mundo approached, with the exception of Angel, refused to sell his or her interest in the land. Mundo's acts in fencing and raising cattle on the land were insufficient, as a matter of law, to put the other heirs (his cousin's children) on notice of his intent to claim title adversely. "Mere possession and use" of the land by one cotenant does not by itself constitute "ouster" of the other cotenants. *Osborn*, 694 P.2d 730, 733.

■ Maria's act of giving Mundo the original determination of ownership to the Mahanmag property did not constitute sufficient notice to the other cotenants for purposes of Mundo's claim of adverse possession. Maria's undisputed testimony was that she delivered the title document only for "Angel's share of the property." Martin, Jose and Joaquin's uncontradicted testimonies were that they refused to sell Mundo their respective interests in the land. Under these factual circumstances, Mundo did not meet his "intensified" burden of proving that the other cotenants knew of his intentions to adversely claim ownership, to their exclusion as the other heirs.

■ Mundo's act of filing a claim of ownership with the Land Commission Office on Rota in 1975 constituted the first clear notice of his adverse claim of ownership. We hold that even if this act constituted constructive notice to Juan's other heirs, Mundo failed to satisfy the twenty-year continuous period for purposes of adverse possession. *See* 7 CMC § 2502(a)(2).

Based on the foregoing, the trial judgment is **AFFIRMED IN PART, REVERSED IN PART**, and **REMANDED** with instructions to the Superior Court to quiet title to the Mahanmag property (Determination of Ownership 154) in the name of Rudolpho Mundo and the heirs of Juan L. Atalig, except Angel, as tenants in common.