883 P.2d 673

**Helen M. MARTIN, Emily Martin Souza and Antone Martin III, Plaintiffs–Appellees,**

v.

**William MARTIN, Defendant–Appellant,**

and

**Heirs of Antone Martin, deceased, John and/or Jane Does 1 to 100, all other Persons Unknown Claiming any Right, Title, Estate, Lien or Interest in the Real Property Described in the Complaint and to all Whom it may Concern, Defendants.**

No. 15901.

Intermediate Court of Appeals of Hawai'i.

Oct. 21, 1994.

---

David W. Proudfoot (Michael J. Belles and Margaret Hanson with him on the opening brief; Margaret Hanson with him on the reply brief), Case & Lynch, Lihue, Kauai, for defendant-appellant.

Clinton I. Shiraishi (Calvin K. Murashige with him on the brief), Shiraishi, Yamada & Murashige, Lihue, Kauai, for plaintiffs-appellees.

Before BURNS, C.J., and HEEN and WATANABE, JJ.

BURNS, Chief Judge.

## BRIEF SUMMARY

On June 1, 1990, plaintiffs Helen M. Martin (Helen), Emily Martin Souza (Emily), and Antone Martin, III (Antone III) filed a Complaint for Determination and Declaration of Heirs and to Partition (June 1, 1990 Complaint) primarily against defendant William Martin (William) for: (1) the determination and declaration of the heirs of Antone Martin, Sr. (Antone I); (2) the partition of Antone I's real property in accordance with the interests of Antone I's heirs; (3) an accounting by William of the rent collected or the reasonable rent which could have been collected from Antone I's real property since Antone I's death; and (4) an order requiring the payment of costs and fees in proportion to the respective interests of the parties.

On November 4, 1991, the circuit court entered a Decree of Determination of Heirs and Order for Partition of Real Property (November 4, 1991 Decree). The November 4, 1991 Decree determined that the fact that there was no probate of Antone I's estate necessitated a decree of heirship; determined that Helen, Emily, William, and Antone III each owned by inheritance an undivided one-fourth interest in Antone I's improved residential real property; ordered the real property to be partitioned by sale; appointed a commissioner; ordered the commissioner to determine the fair market rent-

als for the two houses on the property; and ordered William to file

an accounting of the rentals collected or the reasonable rentals which could have been collected from the two houses located on the Property, and deduct therefrom the real property taxes on the Property and the costs of repairs and maintenance of the houses paid by him.

William appeals the circuit court's January 3, 1992 Order Granting Motion to Set Aside Decree of Determination of Heirs and Order for Partition of Real Property (January 3, 1992 Order). The title of the January 3, 1992 Order is misleading because the only modification it made of the November 4, 1991 Decree was to amend the accounting order by ordering

that a further hearing be held at a time to be mutually agreed upon by counsel at which hearing [William] will be required to account for all rents and other profits received by him from the property subsequent to the death of [Antone I], together with an accounting for the expenses [William] has paid on account of the property, including but not limited to, real property taxes, costs of repairs and maintenance. At said hearing, the Court will determine whether Plaintiffs are entitled to credit from [William] for such rents and profits less expenses, or whether [William] is entitled to a credit from the Plaintiffs for the net amount he expended on account of [the property].

William also appeals the circuit court's January 3, 1992 Decree of Determination of Heirs and Order for Partition of Real Property (January 3, 1992 Decree) that, except for the change in the accounting order, is essentially identical to the November 4, 1991 Decree.

Having determined that this court lacked appellate jurisdiction, we, on July 6, 1994, filed a Temporary Remand to Circuit Court for Possible Action Pursuant to Hawai'i Rules of Civil Procedure Rule 54(b) Finalizing the January 3, 1992 Decree *Nunc Pro Tunc*. In response, the circuit court, on August 3, 1994, entered its Stipulation As To Final Judgment; Order. We therefore now have appellate jurisdiction over the part of

the January 3, 1992 Decree that decided the part of the June 1, 1990 Complaint that sought the determination and declaration of the heirs of Antone I.

## FACTS

Antone I and his wife, Virginia Lara Martin (Virginia), had four children: Helen, Emily, Antone Martin, Jr. (Antone II), and William. Virginia died on May 12, 1973. Antone I died on November 30, 1984. In the event that Virginia predeceased Antone I, Antone I's July 23, 1966 Last Will and Testament (Will) devised to William a 16,558 square foot improved residential real property (Lot 13–A), Tax Map Key No. 4–1–3–1–5, including everything thereon not specifically devised to someone else. The Will expressly devised Antone I's clothing, dishes, pots and pans, household linen, and jewelry to Helen but stated Antone I's "desire" that "[Helen], in her sole discretion, distribute certain articles therefrom amongst her brothers and sister." The Will devised the rest and residue of Antone I's estate to Helen and Emily. The Will named William as Executor and Helen as alternate Executrix.

There are two separate structures on Lot 13–A. Until his death, Antone I lived in the small cottage. William's oldest daughter continues to live in the main house. William resides on a parcel, Tax Map Key No. 4–1–3–1–96, adjoining Lot 13–A.

The "Sixth" paragraph of the Will states as follows:

I remember my beloved son, [Antone II], but make no provision for him in this Will because I have made other provisions for him during my lifetime and have discharged all of my responsibilities to him.

When Antone I executed his Will, William signed an Agreement in which he agreed to pay Antone II, or, in the event of Antone II's death, to pay Antone III, $3,000 on the probate of Antone I's estate and the distribution to William of Lot 13–A. Antone II died prior to the Complaint being filed on June 1, 1990.

Approximately two weeks after Antone I's November 30, 1984 death, William discovered the Will. In an affidavit, William states that he was not aware of the need to probate the Will until "about December 28th or 29th, 1989[,] when [Emily's] husband told [him] that it was too late to probate" it.

## PROCEDURAL HISTORY

The June 1, 1990 Complaint filed by Helen, Emily, and Antone III sought the following:

\* \* \* \* \* \*

4. The Court adjudicate and determine that title to [Lot 13–A], ..., is vested in the following persons, as tenants in common, in the following undivided fractional interests, free and clear of all claims, liens, encumbrances or clouds of any kind:

HELEN M. MARTIN, as to an undivided ¼th interest;

EMILY MARTIN SOUZA, as to an undivided ¼th interest;

WILLIAM MARTIN, as to an undivided ¼th interest; and

ANTONE MARTIN, III, as to an undivided ¼ interest.

5. The Court order partition of the premises,....

6. Defendant WILLIAM MARTIN file an accounting of the rent collected or the reasonable rent which could have been collected from the two houses situate on the premises.

\* \* \* \* \* \*

On August 3, 1990, William, represented by attorneys Walton D.Y. Hong (Hong) and Michael K. Soong (Soong), filed an answer in which he denied the allegation that Antone I died intestate and asked the court "through the exercise of its equitable powers, [to] admit to probate, the Last Will and Testament of [Antone I] dated July 23, 1966."

On March 21, 1991, Hong and Soong filed a motion to withdraw as counsel because William asked them to withdraw. The court orally granted the motion on April 4, 1991. The minutes reflect that Soong was ordered to prepare the order. However, no order was filed.

On February 22, 1991, William, acting "In Propria Persona," filed a Notice of Special Appearance which demanded removal of the case to the United States District Court. On

August 15, 1991, the United States District Court entered an order remanding the case to the Fifth Circuit Court.

In the circuit court, on April 1, 1991, and on May 28, 1991, William, as "Sovereign in pro se," filed notarized notices of special appearance. On August 27, 1991, William, acting "Pro Se," filed one copy each of (1) the Will; (2) his July 23, 1966 Agreement to pay Antone II or Antone III $3,000 "upon the probate of the estate of the survivor of my said parents and distribution to me of the said lands by a court of proper jurisdiction"; and (3) his August 23, 1991 deed of Lot 13–A to his daughter, Joni J. Shigematsu.

The circuit court held a hearing on the merits on October 17, 1991. William did not appear and no one appeared for him. The circuit court's November 4, 1991 Decree decided that Antone I died intestate and granted the requests stated in Plaintiffs' complaint.

On December 4, 1991, William, represented by attorney David W. Proudfoot (Proudfoot), filed a Hawai'i Rules of Appellate Procedure Rule 4(a)(5) Ex Parte Motion to Extend Time to File Notice of Appeal in order to gain time to file a Hawai'i Rules of Civil Procedure (HRCP) Rules 60(b)(1) and (3) motion to vacate the November 4, 1991 decree. That day, an order was entered allowing William up to and including January 3, 1992, within which to file a Notice of Appeal from the November 4, 1991 Decree. On December 16, 1991, William, by Proudfoot, filed his HRCP Rules 60(b)(1) and (3) Motion to Set Aside Decree of Determination of Heirs and Order for Partition of Real Property (December 16, 1991 Motion).

In her December 20, 1991 affidavit, Emily stated:

\* \* \* \* \* \*

18. Part of [Antone I's] will required [William], as Executor, to pay [Antone III] the sum of three thousand dollars;

19. [Emily] is of the information and belief that [William] did not want to pay [Antone III] the amount due him under [Antone I's] will, and therefore [William] did not submit the will for probate;

\* \* \* \* \* \*

In her December 20, 1991 affidavit, Helen stated:

\* \* \* \* \* \*

3. In 1966, [Virginia] told [Helen] that they had bequeathed three thousand dollars to [Antone II];

\* \* \* \* \* \*

5. Later in 1966, [Antone I and Virginia] told [Helen] that a codicil was made increasing [Antone II's] bequest to five thousand dollars;

\* \* \* \* \* \*

14. [Helen] is of the information and belief that [William] did not probate [Antone I's] will because [William] wanted to avoid making a payment to [Antone III];

\* \* \* \* \* \*

The circuit court's January 3, 1992 Order denied William's December 16, 1991 Motion with respect to the decisions that Antone I died intestate and that the property should be partitioned. It granted William's December 16, 1991 Motion with respect to the order for an accounting and ordered a further hearing in that regard.

The circuit court's January 3, 1992 Decree stated in relevant part as follows:

\* \* \* \* \* \*

1. This proceeding is under H.R.S. Section [603–21.7(a)(1) and (2) ] to determine the heirs of [Antone I], and Chapter 668 to partition [Lot 13–A].

\* \* \* \* \* \*

6. [Antone I] left a valid [Will], but there was no probate administration of the estate of [Antone I] pursuant to said [Will] within five (5) years of the death of [Antone I], thereby making it necessary that a Decree of heirship be made, entered and filed herein.

7. . . .

A. On the date hereof, the following persons are the only surviving heirs at law of [Antone I], and the undivided interest inherited or acquired by each person as a tenant in common in and to the aforesaid property is as follows:

[One-fourth to each of Helen, Emily, William, and Antone.]

B. Joseph Kobayashi is appointed Commissioner....

\*   \*   \*   \*   \*   \*

## POINTS ON APPEAL

For the following reasons William contends that the circuit court reversibly erred in entering the January 3, 1992 Order and the January 3, 1992 Decree:

1. The January 3, 1992 Decree should have been set aside under HRCP Rule 60(b)(1) for William's excusable neglect or under HRCP Rule 60(b)(3) for Plaintiffs' misconduct or under Hawai'i Revised Statutes (HRS) § 560:1–106 (1985) for Plaintiffs' fraud.

2. HRS § 560:3–108 (1985) does not preclude William's use of the Will to defeat Plaintiffs' complaint. William states in his Opening Brief:

The Circuit Court proceeding was not a probate proceeding. Instead it was an action to determine the heirs of [Antone I] under the [Plaintiffs'] assertions that [Antone I] had died intestate....

The purpose of the Circuit Court proceeding was not to establish the Will.... [William] is not seeking to establish the Will, but is seeking to introduce the Will as evidence of his status as sole heir.... [OB15]

3. The Will was not ineffective for any purpose because a proceeding could still be commenced by [William] pursuant to HRS § 560:3–108(a)(4) within twelve months after October 17, 1991. Moreover, William was not given notice of Plaintiffs' "probate proceeding" pursuant to HRS § 560:3–108(a)(4).

4. Not allowing the Will to be used as evidence would be inequitable on two grounds. First, William will be deprived of his inheritance. Second, Antone I's clearly stated wishes will not be honored.

## DISCUSSION

### I.

Is the hearing on a Complaint for Determination and Declaration of Heirs a probate proceeding? The answer is no.

HRS chapters 601 and 603 (1985) state in relevant part as follows:

**§ 601–2   Administration.**

\*   \*   \*   \*   \*   \*

(b) The chief justice shall possess the following powers, subject to such rules as may be adopted by the supreme court:

\*   \*   \*   \*   \*   \*

(2) In a circuit court with more than one judge, (A) to make assignments of calendars among the circuit judges for such period as the chief justice may determine and, as deemed advisable from time to time, to change assignments of calendars or portions thereof (but not individual cases) from one judge to another,....

\*   \*   \*   \*   \*   \*

**§ 603–21.6.   Probate.** The several circuit courts shall have power to grant probate of wills, to appoint personal representatives, to determine the heirs at law or devisees of deceased persons and to decree the distribution of decedents' estates, ... and to do all other things as provided in chapter 560.

**§ 603–21.7   Nonjury cases.** The several circuit courts shall have jurisdiction, without the intervention of a jury except as provided by statute, as follows:

(a) Of actions or proceedings:

(1) For the determination and declaration of heirs of deceased persons, which jurisdiction shall be in addition to the probate jurisdiction of the court;

\*   \*   \*   \*   \*   \*

The derivation of HRS §§ 603–21.6, –21.7 is explained in the September 1, 1971 Report of Committee on Coordination of Rules and Statutes. It states in relevant part as follows:

*Reporter's Notes—§ 603–21.6*

\*   \*   \*   \*   \*   \*

The above draft of a section on probate jurisdiction is derived from § 603–22(3) with changes as follows:

The provision as to the power to determine heirs and to decree distribution has been broadened to include all estates, as distinguished from the present provision which is limited to intestate estates. This conforms § 603–22(3) to §§ 531–14 and 531–32. As to the background of these statutory provisions see *Chun Ming v. Ho,* 45 Haw. 521, 533, 371 P.2d 379; *Estate of Kaiena,* 24 Haw. 148, 150; *Mossman v. Hawaiian Government,* 10 Haw. 421, 432. This change also emphasizes the distinction between probate jurisdiction and the jurisdiction enjoyed in an action in the nature of a suit in equity to determine heirs at law pursuant to HRS § 637–2(15), which will be preserved by § 603–21.7(1). As to this type of suit, see *Estate of Kekuewa,* 37 Haw. 394, 397.

\* \* \* \* \* \*

*Reporter's Notes—§ 603–21.7*

This section preserves parts of the present section 603–22, which section relates to the jurisdiction of a circuit judge at chambers....

\* \* \* \* \* \*

Paragraph (1) of the present § 603–22 relates to equity jurisdiction, which in turn is set out in chapter 637. It is contemplated that the provisions of chapter 637 will be omitted and, where pertinent, placed elsewhere with suitable revisions. Carried into paragraph (a)(1) of this section is the provision for determination and declaration of heirs (§ 637–2(15))....

\* \* \* \* \* \*

Report of Committee on Coordination of Rules and Statutes Vol. 1 (1971).

■ In other words, the circuit court presiding over the probate calendar has jurisdiction over a probate proceeding as defined in HRS § 560:1–201(36) (1985), i.e., "a proceeding designed to effect the settlement of the estate of a decedent by collecting the decedent's assets, paying the decedent's debts and distributing the decedent's remaining property." A probate proceeding may include the determination and declaration of heirs of a deceased person. However, a proceeding on a complaint for the determination

and declaration of heirs of a deceased person is a non-probate proceeding and the circuit court presiding over the civil calendar has jurisdiction over it. The Martins' case involves the latter situation.

■ A complaint for determination of heirs is an authorized way of "determin[ing] heirship for the purpose of resolving ownership of real estate owned by a person dying intestate." *In re Keamo,* 3 Haw.App. 360, 366, 650 P.2d 1365, 1370 (1982). Further, the fact that Plaintiffs also sought a partition does not turn the proceeding into a probate proceeding, i.e., "a proceeding designed to effect the settlement of the estate of a decedent[.]" HRS § 560:1–201(36) (1985).

II.

Hawai'i's Uniform Probate Code states in HRS chapter 560 (1985) in relevant part as follows:

\* \* \* \* \* \*

**§ 560:1–106. Effect of fraud and evasion.**

Whenever fraud has been perpetrated in connection with any proceeding or in any statement filed under this chapter or if fraud is used to avoid or circumvent the provisions or purposes of this chapter, any person injured thereby may obtain appropriate relief against the perpetrator of the fraud or restitution from any person (other than a bona fide purchaser) benefitting from the fraud, whether innocent or not....

**§ 560:1–201. General definitions.**

\* \* \* \* \* \*

(5) "Court" means the circuit court having jurisdiction in matters relating to trusts and the estates of decedents, missing persons, protected persons, minors and incapacitated persons.

\* \* \* \* \* \*

(36) "Probate proceeding" means a proceeding designed to effect the settlement of the estate of a decedent by collecting the decedent's assets, paying the dece-

dent's debts and distributing the decedent's remaining property.

\* \* \* \* \* \*

## § 560:1–401. Notice, method and time of giving.

(a) If notice is required and except for specific notice requirements as otherwise provided, the applicant or petitioner shall cause notice to be given to any interested person or the person's attorney if the person has appeared by attorney or requested that notice be sent to the person's attorney, or, in the case of a minor or an incapacitated person, the minor's or incapacitated person's parent or guardian, as appropriate. Notice shall be given:

(1) By any method by which the person entitled to notice receipts for a copy thereof at least fourteen days before the time set for the hearing; or

\* \* \* \* \* \*

## § 560:1–402. Notice; waiver.

A person, including a guardian ad litem, guardian of the property, or other fiduciary, may waive notice by a writing signed by him or his attorney and filed in the proceeding.

\* \* \* \* \* \*

## § 560:3–101. Devolution of estate at death; restrictions.

The power of a person to leave property by will, and the rights of creditors, devisees, and heirs to the person's property are subject to the restrictions and limitations contained in this chapter to facilitate the prompt settlement of estates. Upon the death of a person, the person's real and personal property vests in the persons to whom it is devised by the person's last will or in those indicated as substitutes for them in cases involving lapse, renunciation, or other circumstances affecting the devolution of testate estates, or in the absence of testamentary disposition, in the person's heirs, or in those indicated as substitutes for them in cases involving renunciation or other circumstances affecting devolution of intestate estates, subject to homestead allowance, exempt property and family allowance, to rights of creditors, elective share of the surviving spouse, and to administration.

## § 560:3–102. Necessity of order of probate for will.

[T]o be effective to prove the transfer of any property or to nominate a personal representative, a will must be declared to be valid by an order of informal probate by the registrar, or an adjudication of probate by the court.

\* \* \* \* \* \*

## § 560:3–108. Probate proceedings; ultimate time limit.

(a) No probate proceeding seeking to establish a will, other than an ancillary proceeding, may be commenced more than five years after the decedent's death except under the following conditions and circumstances:

\* \* \* \* \* \*

(4) A formal testacy proceeding or a supervised administration may be commenced within twelve months after the petitioner learns of a prior probate proceeding in which an order of probate or an adjudication of intestacy was entered if the petitioner (i) is a devisee of or an heir to property of the decedent under the proceedings which the petitioner intends to commence, and (ii) did not receive notice pursuant to section 560:1–401 of the commencement of the prior probate proceeding, and if the petitioner's interest was not adequately represented by another party having a substantially identical interest in the prior probate proceeding.

\* \* \* \* \* \*

### III.

■ HRS § 560:3–108 bars William from probating the Will. *In re Estate of Pallister,* 13 Kan.App.2d 337, 770 P.2d 494 (1989); *In re Estate of Taylor,* 207 Mont. 400, 675 P.2d 944 (1984).

The relevant legislative history states:

\* \* \* \* \* \*

49. *Change:* Your Committee's draft of section 3–108 effects many changes: first, it establishes a basic rule that, except for ancillary probates, no informal or formal

proceeding to probate a will may be commenced more than 5 years after the decedent's death ...; second, it establishes the following significant exceptions to and modifications to that rule: (i) a proceeding to declare an intestacy may be commenced at any time if a proceeding to probate a will was not commenced within that 5-year period; ....

*Reason:* Your Committee is attracted to the Uniform Probate Code's attempt to add certainty to probate proceedings by setting an absolute bar to actions commenced more than a specified number of years after the decedent's death, ....

Sen.Conf.Comm.Rep. No. 24–76, in 1976 Senate Journal at 856.

Other states recognize various non-statutory exceptions.

Among the excusing circumstances recognized by some courts for failure to submit a will within the time limit set by statute are those wherein the will has been withheld or concealed from the proponents, who were uncertain as to its execution or contents until it was discovered. The circumstances that the will was "lost" or remained undiscovered during the running of the statutory period has also been held to excuse compliance therewith.... A mistaken belief on the part of the proponent that the will was invalid or otherwise not entitled to probate has given rise to contrary results in the few cases dealing with it, as have miscellaneous other excuses urged to avoid the effect of the statute.

Annotation, *What Circumstances Excuse Failure to Submit Will for Probate Within Time Limit Set by Statute,* 17 A.L.R.3d 1361, 1363 (1968) (footnotes omitted). We need not decide whether Hawaiʻi will recognize any of these non-statutory exceptions, however, because the facts in William's case do not implicate any of the non-statutory exceptions recognized in other states. Clearly, the legislature decided that William had a maximum of five years from Antone I's death on November 30, 1984 to commence a probate proceeding seeking to establish the Will. William's failure to do so allowed his nephew and sisters to take advantage of the statutorily authorized opportunity to ignore Antone

I's Will and for each of them to acquire title to one-fourth of Lot 13–A. This consequence of William's inaction is contrary to Antone I's express Will, but it is mandated by statute and is not inequitable.

### IV.

HRS § 560:3–102 bars William from using the unprobated Will to defeat Plaintiffs' complaint. The relevant legislative history states:

\* \* \* \* \* \*

46. *Change:* Section 3–102 is amended by deleting the provisions under which an unprobated will may be used as evidence of a devise.

*Reason:* Your Committee feels that, if a will is to be used as evidence of the passage of title, it should be subjected to judicial scrutiny and approval in a probate proceeding. (Citation omitted.)

Sen.Conf.Comm.Rep. No. 24–76, in 1976 Senate Journal at 855.

### V.

As noted above in section I, the proceeding in the circuit court was a civil proceeding; therefore, the HRCP applies. It states in relevant part as follows:

**Rule 60. RELIEF FROM JUDGMENT OR ORDER.**

\* \* \* \* \* \*

**(b) Mistakes; Inadvertence; Excusable Neglect; Newly Discovered Evidence; Fraud, Etc.** On motion and upon such terms as are just, the court may relieve a party or his legal representative from a final judgment, order, or proceeding for the following reasons: (1) mistake, inadvertence, surprise, or excusable neglect; ...; (3) fraud (whether heretofore denominated intrinsic or extrinsic), misrepresentation, or other misconduct of an adverse party; ....

Pursuant to HRCP Rule 60(b)(1), the circuit court would have erred if the record showed:

(1) that the nondefaulting party will not be prejudiced by the reopening, (2) that the defaulting party has a meritorious defense,

and (3) that the default was not the result of inexcusable neglect or a wilful act. *BDM, Inc. v. Sageco, Inc.,* 57 Haw. 73, 77, 549 P.2d 1147, 1150 (1978). As noted in sections III and IV above, William does not have a meritorious defense.

HRCP Rule 60(b)(3) is also relevant. However, there is no evidence of Plaintiffs' fraud. Assuming Plaintiffs knowingly, passively, and silently waited for the relevant five years to pass before they notified William of his neglect, their silence and inaction is not fraud. Plaintiffs had no affirmative duty to say or do anything. Therefore, the fact that they did not say or do anything is not fraud. *Ellis v. Crockett,* 51 Haw. 45, 46, 451 P.2d 814, 816 (1969).

## VI.

Since this case is not a probate proceeding, it could not be "a prior probate proceeding" as referred to in HRS § 560:3–108(a)(4). Moreover, this case commenced on June 1, 1990, William was notified by service on July 18, 1990, and William filed an answer on August 3, 1990. Therefore, HRS § 560:3–108(a)(4) is not applicable because William received notice. Finally, see sections II and III above.

## VII.

In his opening brief, William states, "[Plaintiffs] are proposing that [William] be forced to give up what [Antone I] wanted him to have; but they are not suggesting that they be required to take an accounting of the items they received at the death of [Antone I] and relinquish [William's] share." William had also made the same comment in his December 16, 1991 Motion. However, William never requested an order for such an accounting. Moreover, in this appeal, he has not claimed as error the fact that the circuit court did not *sua sponte* order such an accounting.

## CONCLUSION

Accordingly, we affirm the circuit court's January 3, 1992 Order Granting Motion to Set Aside Decree of Determination of Heirs and Order for Partition of Real Property and its January 3, 1992 Decree of Determination of Heirs and Order for Partition of Real Property.