135 P.3d 113

STATE of Hawai'i, by its OFFICE OF CONSUMER PROTECTION, Plaintiff–Appellee,

v.

HONOLULU UNIVERSITY OF ARTS, SCIENCES AND HUMANITIES, a Hawaii nonprofit corporation, Defendant–Appellant.

No. 26755.

Supreme Court of Hawai'i.

May 25, 2006.

---

**16.** Because the foregoing error is dispositive, we do not reach Travelers' remaining assignments of error.

Gary Y. Shigemura and Junsuke Otsuka, Honolulu (of the Law Office of Gary Y. Shigemura), on the briefs, for defendant-appellant Honolulu University of Arts, Services and Humanities.

Jeffrey E. Brunton, Honolulu, on the briefs, for plaintiff-appellee State of Hawaii, by Its Office of Consumer Protection.

MOON, C.J., LEVINSON, NAKAYAMA, ACOBA, and DUFFY, JJ.

Opinion of the Court by MOON, C.J.

Defendant-appellant Honolulu University of Arts, Sciences, and Humanities (Honolulu University) appeals from the Circuit Court of the First Circuit's August 5, 2004 amended judgment [1] in favor of plaintiff-appellee State of Hawai'i (State) Office of Consumer Protection (OCP), in which the circuit court essentially enforced a prior stipulated judgment that had, *inter alia:* (1) enjoined Honolulu University from violating several State consumer protection laws regarding unaccredited institutions; and (2) ordered Honolulu University to provide a full refund to any degree holder on the condition that the degree holder returned his or her diploma to Honolulu University.

On appeal, Honolulu University raises twenty-one points of error, discussed *infra,* generally raising issues regarding subject matter jurisdiction, standing, *res judicata,* the lack of findings of fact (FOFs) and conclusions of law (COLs), and constitutional violations, as well as evidentiary matters. For the reasons discussed below, we affirm

the circuit court's August 5, 2004 amended judgment.

## I. BACKGROUND

### A. The OCP's Complaint Against Honolulu University

On June 7, 2002, the OCP [2] filed a complaint against Honolulu University, a State non-profit organization. The OCP alleged that Honolulu University is an "unaccredited institution" as defined by HRS § 446E–1 (Supp.2005) [3] and that it was "engaging in certain acts or practices in violation of [the State's] consumer protection laws[.]" Specifically, the OCP alleged that Honolulu University: (1) failed to disclose that it was an unaccredited institution in violation of HRS § 446E–2(a) (Supp.2005) [4] (Count I); (2) represented that the State licenses, approves, or regulates the operation of Honolulu University in violation of HRS § 446E–5(a) (Supp. 2005) [5] (Count II); and (3) accepted or received tuition payments or other fees on behalf of students while it was not in compliance with the applicable laws in violation of HRS § 446E–5(e) (Supp.2005) [6] (Count III). The OCP also alleged that violations of HRS §§ 446E–2(a), –5(a), and –5(e) constitute per se violations of HRS § 480–2(a) (1993).[7] The OCP prayed for injunctive relief, civil penal-

---

1. The Honorable Sabrina S. McKenna presided over the underlying proceedings.

2. The OCP is a division of the State Department of Commerce and Consumer Affairs (DCCA) and was created in 1969 by the legislature. Hawai'i Revised Statutes (HRS) § 487–2 (1993). The director of the OCP is designated the consumer counsel for the State "and shall represent and protect the State, the respective counties, and the general public as consumers." HRS § 487–5 (1993).

3. HRS § 446E–1 provides in relevant part:

    "Unaccredited institution" means a degree granting institution that is not accredited or a candidate for accreditation by at least one nationally recognized accrediting agency that is listed by the United States Secretary of Education.

4. HRS § 446E–2(a) provides in relevant part:

    Any unaccredited institution shall disclose in all catalogs, promotional materials, and contracts for instruction, the fact that the institution is not accredited by any nationally recog-

nized accrediting agency listed by the United States Secretary of Education.

5. HRS § 446E–5(a) provides in pertinent part that "[n]o unaccredited institution shall indicate or suggest that the State licenses, approves, or regulates its operations."

6. HRS § 446E–5(e) provides that "[n]o unaccredited institution that operates in or from the State or has a presence in this State shall accept or receive any tuition payment or other fee from or on behalf of a student unless the institution complies with all of the requirements of this chapter."

7. HRS § 480–2(a) provides that "[u]nfair methods of competition and unfair or deceptive acts or practices in the conduct of any trade or commerce are unlawful."

    Although not cited by the OCP, HRS § 480–3 (Supp.2005), entitled "Sanctions," provides that "[a]ny person who violates this chapter shall be deemed to have engaged in an unfair or deceptive act or practice pursuant to section 480–2."

ties pursuant to HRS § 480–3.1 (1993),[8] restitution pursuant to HRS § 487–14 (Supp. 2005),[9] an award of attorney's fees, costs, and expenses, and other relief deemed just and equitable under the circumstances.

## B. *Entry of the Stipulated Judgment*

After approximately one year of litigation, the OCP and Honolulu University agreed to settle the OCP's claims against Honolulu University. On July 8, 2003, the circuit court entered a "Stipulated Permanent Injunction and Final Judgment" in favor of the OCP and against Honolulu University (stipulated judgment). The stipulated judgment stated in relevant part:

6. [Honolulu University] shall be and is enjoined from[:] (a) failing to properly and adequately disclose the fact that Honolulu University is and was not fully accredited by any nationally recognized accrediting agency or association listed by the United States Secretary of Education in any and all of its promotional materials; (b) indicating or suggesting that the State of Hawai'i licenses, approves of[,] or regulates its operations in any and all of its promotional materials; and (c) failing to comply with [HRS chapter 446E or HRS § 480–2(a) ] in any other particulars.

7. *[Honolulu University] shall provide a full refund to any degree holders and degree applicants who enrolled by, in or through any of its foreign agents, conditioned on the return of any diploma awarded.* Said refund shall be paid by certified check within fourteen days of receipt of the request for such and the return of the diploma, if applicable. *In the*

*event [Honolulu University] fails to make restitution as required herein, [Honolulu University] agrees, in addition to all other payments required herein, to pay the [OCP] civil penalties in the amount of One Thousand Dollars ($1,000.00) for each consumer who does not receive full restitution as required and set forth herein.*

8. [Honolulu University] be and is hereby liable to pay to the [OCP] civil penalties, attorneys' fees and costs of investigation pursuant to [HRS] § 480–3.1 in the total amount of $19,500.00[.]

. . . .

12. *This court shall retain jurisdiction of this case for the purpose of enabling any of the parties to this stipulation to apply to this court at any time for further orders and directions as may be necessary or appropriate to carry out or construe this stipulation, to modify or terminate any of their provisions, to enforce compliance, and to punish violations of its provisions.* If it shall be made to appear to the court that there has been a violation of any of the terms of this stipulation, upon motion, this court may enter an order to show cause why [Honolulu University] should not be found in contempt. Nothing in this document shall bar [the OCP] from seeking, or the court from imposing, against [Honolulu University] or any other person any other relief available under any other applicable provision of law for violation of this document, in addition to or in lieu of the civil penalties provided for above.

. . . .

8. HRS § 480–3.1 provides:
   **Civil penalty.** Any person, firm, company, association, or corporation violating any of the provisions of section 480–2 shall be fined a sum of not less than $500 nor more than $10,000 for each violation, which sum shall be collected in a civil action brought by the attorney general or the director of the office of consumer protection on behalf of the State. The penalties provided in this section are cumulative to the remedies or penalties available under all other laws of this State. Each day that a violation of section 480–2 occurs shall be a separate violation.
   (Bold emphasis in original.)

9. HRS § 487–14 provides in relevant part:
   **Restitution.** (a) In any action brought by the director of the [OCP], the court may include in its orders or judgments such provisions as may be necessary to effect restitution. Any person in whose favor restitution is ordered need not accept restitution, but the person's acceptance and full performance of restitution shall bar recovery by the person of any other damages in any action on account of the same acts or practices against the person making restitution.
   (Bold emphasis in original.)

14. There are no other remaining claims or parties in this manner [sic].

(Emphases added.)

## C. The OCP's Receipt of Six Refund Requests

On July 31, 2003, the OCP received refund requests from six alleged degree holders from China (the six Chinese students) who had enrolled at Honolulu University through its foreign affiliate. The six refund requests were made on the OCP's standard complaint forms available on the OCP's website. On August 1, 2003, the OCP sent a letter to Honolulu University's attorney, Randal Y. Yoshida, requesting a full refund for the six Chinese students.[10] The OCP stated that, once it received the six Chinese students' original diplomas, it would "hand over possession of the original diplomas upon simultaneous receipt of the certified checks." The OCP attached copies of the six refund requests to the letter sent to Yoshida.

On August 8, 2003, the OCP sent a second letter to Yoshida, informing him that the OCP had received the six Chinese students' original diplomas and "certificates of graduation." The OCP stated that it would turn over possession of the diplomas upon receipt of the certified checks on August 18, 2003. Also on August 8, 2003, Yoshida sent a letter to the OCP, informing the OCP that the president of Honolulu University, Arthur Yamada, was away on a business trip and to direct all future requests for refunds directly to Honolulu University. On August 11, 2003, the OCP sent a letter directly to Yamada, notifying him of the refund requests by the six Chinese students. The OCP attached copies of the six Chinese students' diplomas and certificates of graduation and offered Yamada an opportunity to view and inspect the original diplomas and certificates of grad-

uation. The OCP reiterated that restitution was due on August 18, 2003.

Honolulu University apparently did not respond to the OCP's August 11, 2003 letter to Yamada. On August 19, 2003, a day after restitution was due, the OCP sent a letter to Honolulu University's newly retained counsel, Gary Shigemura,[11] informing him that Honolulu University was in default of the stipulated judgment and that an additional $6,000 in civil penalties was now due.[12]

Honolulu University apparently did not provide restitution or pay the additional $6,000 in civil penalties on the alleged ground that the six Chinese students were not Honolulu University graduates. Subsequently, the OCP subpoenaed Yamada and Honolulu University's registrar, Naty Mercado, in order to investigate Honolulu University's assertion that the six Chinese students were not Honolulu University graduates. On September 29, 2003, the OCP deposed Mercado. Mercado testified that, despite checking Honolulu University's records, she found no record of the six Chinese students graduating from Honolulu University. Mercado also testified that she was unable to recognize her signature on the diplomas and the certificates of graduation. On October 15, and 17, 2003, the OCP deposed Yamada. Yamada also testified that he was unable to determine whether it was his signature on the diplomas and the certificates of graduation.

## D. The OCP's Motion for Relief

Inasmuch as the parties were unable to resolve the claims for restitution by the six Chinese students, the OCP filed a motion for relief with the circuit court pursuant to the stipulated judgment on May 10, 2004. The OCP requested the circuit court to determine that Honolulu University had failed to pay the claims for restitution by the six Chinese students in violation of the stipulated judg-

---

10. The six refund requests sought reimbursement in the amounts of $4,791.62, $3,693.73, $4,900.00, $4,660.00, $4,993.29, and $4,900.00, for a total of $27,938.64.

11. It is unclear when Shigemura was retained by Honolulu University. It appears that Shigemura was retained sometime between August 8, 2003 and August 19, 2003.

12. As previously stated, the stipulated judgment provided that, in the event Honolulu University failed to make restitution within fourteen days of receipt of a refund request, Honolulu University agreed to pay the OCP civil penalties in the amount of $1,000 for each consumer who did not receive full restitution. Inasmuch as there were six Chinese students, the OCP maintained that Honolulu University was liable for an additional $6,000 in civil penalties.

ment. In addition, the OCP sought $6,000 in civil penalties pursuant to the stipulated judgment. The OCP further requested that the circuit court enter relief in the form of an amended judgment. The OCP attached a proposed amended judgment as an exhibit to its motion for relief.[13] The OCP also attached, *inter alia,* copies of the six Chinese students' refund requests made on the OCP's standard complaint forms, copies of the six Chinese students' diplomas and certificates of graduation, and several color copies of photographs of the six Chinese students allegedly taken at Honolulu University's opening and graduating ceremonies, as exhibits in its motion for relief. Furthermore, the OCP informed the circuit court that it was duplicating a "home video VCD" showing the six Chinese students in Honolulu, Hawai'i, "wearing caps and gowns at [Honolulu University's] formal commencement ceremonies at the Sheraton Waikiki."

On May 20, 2004, Honolulu University filed its memorandum in opposition to the OCP's motion for relief. Honolulu University described the various relationships it had with its foreign affiliates and universities in China. Specifically, according to Honolulu University, students in China, including the six Chinese students, work with Honolulu University's foreign affiliates and universities in China based on curricula prepared by Honolulu University but taught by Chinese professors. Moreover, Honolulu University alleged that "[t]he total amount of the students' payments to [the foreign affiliates is] not known to Honolulu University since Honolulu University is not paid any tuition directly from the students and payment is only made to Honolulu University from [the foreign affiliates] and/or the Chinese [u]niversit[ies]." Furthermore, it appeared that Honolulu University was disputing the authenticity of the six Chinese students' refund requests, alleging that a "scheme" was de-

vised in an attempt to extort money from Honolulu University. Finally, Honolulu University requested the circuit court to compel the OCP "to produce all documents and all students who are making ... claims for refund and satisfy the basic due process required of all parties."

A hearing was held on the OCP's motion for relief on May 27, 2004. Therein, the circuit court noted that many of Honolulu University's arguments "appear[ed] to be trying to set aside the judgment that was previously entered[, *i.e.,* the stipulated judgment]." The following discussion occurred between the circuit court and counsel for Honolulu University:

[HONOLULU UNIVERSITY'S COUNSEL]: [T]he problem with these students, [*i.e.,* the six Chinese students,] Your Honor, is that if you look at the so-called complaint that they filed, it's not certified.

We don't really know whether they are still involved with the program. We don't know who they are. But we wanted to have a chance to get their original certified claims. We wanted to have them sign under oath so that we have a chance to go and talk with them, interview them, and determine whether in fact it's true that they're saying that they were not notified directly by Honolulu University that Honolulu University was non-accredited.

THE COURT: That's—I don't think that's a real issue before the [c]ourt. It's not whether or not they were actually deceived. The [stipulated] judgment says that they—students—

[HONOLULU UNIVERSITY'S COUNSEL]: Uh-huh.

THE COURT:—upon present—you know, return of the diplomas shall be provided full refunds. That's what it says.

. . . .

---

13. The proposed amended judgment was identical to the stipulated judgment, except the proposed amended judgment added new subparagraphs 7(A), (B), and (C), which essentially provided that Honolulu University would be liable for the claims of restitution by the six Chinese students and $6,000 in civil penalties. The proposed amended judgment also provided that, in the event Honolulu University failed to

make restitution or pay the $6,000 civil penalty within ten days of the entry of the proposed amended judgment, Honolulu University would be enjoined from conducting any further operations. Finally, the proposed amended judgment included a provision that states, "[t]his judgment supercedes [sic] the [stipulated judgment]."

[HONOLULU UNIVERSITY'S COUNSEL]: [U]nder those circumstances, the [stipulated] judgment does not say how we are to determine how much is to be paid, if at all. And that was my argument, Your Honor, that since we're saying that we never conducted the program themselves and we had merely set up the curriculum, how can it be that we would be responsible for the tuition to these students.

I can see, Your Honor, some argument saying that the amount that was paid to Honolulu University is somehow in question here. But I cannot see the argument, Your Honor, that my client would be entitled—or would be responsible for paying back tuition when they were not the collector of that money and they didn't get paid that money.

THE COURT: So why is it that—then that your institution issues degrees to these persons who—over whom you apparently had no control?

[HONOLULU UNIVERSITY'S COUNSEL]: There's an issue with the degrees themselves, Your Honor. As we set forth previously, we had tried to get from [the OCP's counsel] copies of the receipts, copy—original of the degrees, original of all documents and all letters from the students so we can determine the truthfulness of what they are saying. We have not been able to get those documents for examination, Your Honor. Never. We got copies, Your Honor. But no originals.

. . . .

[HONOLULU UNIVERSITY'S COUNSEL]: Now, it's true, I cannot argue that [stipulated] judgment, Your Honor, because the [stipulated] judgment says what it says. And I was not involved in the making of the [stipulated] judgment. However, it's our position, Your Honor, that there's a matter of fairness here.

If anybody who goes to any school, accredited or non-accredited, says, hey, I don't like what happened here, I want my money back, isn't there some fairness in—in the courts in saying, look, these students should legitimately be challenged on what statements they make as far as whether they were in fact misled and whether in fact how much they did pay.

I still don't know what they've paid, Your Honor. The complaint, Your Honor, that they filed, the [S]tate—the letters are not certified. So it's not under oath. And we can't find the students.

The circuit court, however, disagreed with Honolulu University's position and stated:

Okay. The [stipulated judgment] clearly says that the parties agreed that this court shall retain jurisdiction of this case for the purpose of enabling any of the parties to the stipulation to apply to this court at any time for further orders and directions as may be necessary or appropriate to carry out or construe the stipulation, to enforce compliance, and to punish violations of its provisions.

Par—paragraph 7 of the [stipulated] judgment clearly provided that [Honolulu University] shall provide a full refund to any degree holders and degree applicants who enrolled by, in, or through any of its foreign agents, conditioned on the return of any diploma awarded. Said refund shall be by certified check within 14 days of the receipt of the request for such and the return of the diploma, if applicable.

[OCP's counsel] has made a sufficient showing that the diplomas were proposed to be returned. *There—the judgment that the parties stipulated to showing that the cashier's check was to be provided within 14 days clearly shows that there was never any intention to allow [Honolulu University] to go to China and investigate these persons[, i.e., the six Chinese students], to see whether or not they were actually defrauded or anything of that nature.*

This—the [stipulated] judgment was agreed to by the parties and it says full refund. It is not between these students who have been basically victimized by [Honolulu University] to figure out how, you know—to chase the people in China or figure out how it's to—to be done.

Based on what has been submitted, the [c]ourt finds that the persons in the motion[, i.e., the six Chinese students], did pay the amounts reflected and pursuant to the [stipulated] judgment are entitled to

the full refund of those amounts, and the [c]ourt at this time is granting the [OCP's] motion [for relief] and includes the additional $6,000 in penalties based on the [stipulated] judgment also.

So at this time the [c]ourt is ruling that the first amended judgment should be filed.

(Emphasis added.) At the end of the hearing, the *circuit court requested the OCP's attorney to "submit the original of the amended judgment."*

On June 14, 2004, however, the circuit court entered an amended order proposed by Honolulu University, entitled "Order Granting Plaintiff's First Motion for Relief Pursuant to the Stipulated Permanent Injunction and Final Judgment Against Defendant Honolulu University" (Honolulu University's order). Honolulu University's order simply provided that Honolulu University was liable for the full refund to the six Chinese students and was liable for $6,000 in civil penalties to the "complaints."

### E. *The Motions for Reconsideration*

#### 1. **Honolulu University's Motion for Reconsideration**

Subsequently, both parties filed cross-motions for reconsideration of Honolulu University's order. On June 18, 2004, Honolulu University moved for reconsideration and/or clarification of Honolulu University's order; Honolulu University requested the circuit court to issue FOFs and COLs pursuant to Hawai'i Rules of Civil Procedure (HRCP) Rule 52 (2003), quoted *infra.* Honolulu University stated that the OCP's actions were "in [the] nature of a quasi-criminal matter[.]" Moreover, Honolulu University contended that the OCP "ha[d] not shown by a preponderance of the evidence" that the six Chinese students "were to be included in this matter or [were] actually students and/or degree holders of Honolulu University." Honolulu University further argued that the stipulated judgment was "vague, ambiguous, and ha[d] not been satisfied."

On June 25, 2004, Honolulu University filed a supplemental memorandum to its motion for reconsideration, in which Honolulu University contended that "[s]olicitation of complainants and enforcement of restitution by the OCP must be prohibited because it inevitably creates an attorney-client relationship between the OCP and complainants." Specifically, Honolulu University argued that counsel for OCP solicited the six Chinese students' complaints for refund requests by posting the terms of the stipulated judgment on a website. Moreover, Honolulu University alleged that, "[b]y soliciting and enforcing restitution against Honolulu University, the OCP actually acted on behalf of complainants as their personal attorney to consequently bind six (6) complainants[, *i.e.,* the six Chinese students] to legally waive other remedies, which he or she may allegedly otherwise [have] had." As such, Honolulu University concluded that "the OCP did not have any authority under the law to commence an enforcement proceeding seeking restitution for third-parties solicited after the fact and the motion [for relief] itself is in conflict of interest and void and against public policy."

On June 28, 2004, the OCP filed its memorandum in opposition to Honolulu University's motion for reconsideration. The OCP argued that:

In its most recent motion, Honolulu University again attempts to force a complete relitigation of the entire case on a student-by-student basis as if the [stipulated judgment] simply doesn't exist. It has now even served [the OCP] with post-judgment discovery requests.

The stipulated [judgment] was intended as an expeditious way to process any refund requests from Honolulu University's students/graduates who were enrolled through its foreign agents. It was not intended to require the students to file completely new cases and litigate them to new judgments. In fact, if the students were required to do all that Honolulu University now demands of them, they would be entitled not merely to a refund of the amounts they paid, but to treble damages and attorneys fees. Honolulu University apparently has a fundamental misunderstanding of the nature and role of [the OCP], complaining that it somehow illegal-

ly or unethically "solicited" complaints. In fact, all [the OCP] has done is notify potential claimants of their rights under the [stipulated] judgment.

The settlement refund provision was premised on the assumption that if claims were received, Honolulu University would be able to easily check its records and confirm the status of the claimants as students/graduates and the amounts they had paid since it is required by law to keep such records. When these six specific refund requests were tendered to Honolulu University, it informed [the OCP] that it had no records of them and denied they were even students. Of course, the photographs of Honolulu University president Arthur Yamada handing them their diplomas at the Sheraton Waikiki put the lie to that claim.

On July 1, 2004, Honolulu University filed its reply memorandum to its motion for reconsideration. It claimed that the OCP "does not understand the fundamental legal issues involved in this proceeding." Honolulu University argued that "[t]here is a procedural lack of indispensable parties to make a proper evidentiary findings [sic] for any enforcement." In addition, it alleged that "[t]he OCP ... lacks standing to make a decision to enforce restitution on behalf of the complainants."

### 2. The OCP's Motion for Reconsideration

After Honolulu University moved for reconsideration, the OCP moved for reconsideration of Honolulu University's order on June 21, 2004. The OCP stated:

There are at least two problems with [Honolulu University's] order. First, although it contains language which reads like judgment language ("Defendant be and is hereby liable"), it is not titled a judgment nor would it be collectible in the event [Honolulu University] simply fails or refuses to pay. Unlike a judgment which is immediately enforceable ten days after its entry, the "order" has no such enforcement date. Second, [Honolulu University's] order indicates that [Honolulu University] is liable to "complaints" [sic] for the additional $6,000 in penalties. Under the terms of the [stipulated judgment], those penalties are payable to the [OCP]—not the "complaints" or presumably the complainants.

As such, the OCP requested the circuit court to either vacate Honolulu University's order and enter the OCP's "proposed versions"[14] or enter the proposed amended judgment that was attached to the OCP's motion for relief.

On June 25, 2004, Honolulu University filed its memorandum in opposition to the OCP's motion for reconsideration. It contended that the OCP could not amend the stipulated judgment without an evidentiary hearing. Specifically, Honolulu University argued that:

The OCP is soliciting complaints in order to derive monetary compensation penalties. Normally, the OCP obtains jurisdiction, only after [c]omplainants make their claims which is in the nature of an information in a criminal case. After the complaints are filed, the [defendant] is given an opportunity to respond and an evidentiary hearing is conducted. Then a judgment is obtained as to the complaints and jurisdiction is lost except as to ancillary jurisdiction over the issue of enforcement.

### F. *Entry of the Amended Judgment and Resolution of the Motions for Reconsideration*

On August 5, 2004, the circuit court entered a "First Amended Permanent Injunction and Final Judgment Against Defendant Honolulu University" (amended judgment). The amended judgment appeared to be the proposed amended judgment that the OCP had attached to its motion for relief. *See supra* note 13. In addition to the provisions contained in the stipulated judgment, the amended judgment essentially provided that Honolulu University would be liable for the claims of restitution by the six Chinese stu-

---

14. The OCP attached as an exhibit to its motion for reconsideration a proposed order that was earlier transmitted to Honolulu University's at-

torney. The proposed order merely provided that the OCP's motion for relief "be and hereby is granted."

dents and $6,000 in civil penalties. The amended judgment also provided that, in the event Honolulu University failed to make restitution or pay the $6,000 civil penalty within ten days of the entry of the amended judgment, Honolulu University would be enjoined from conducting any further operations. Finally, the amended judgment included a provision that stated, "[t]his judgment supercedes [sic] the [stipulated judgment]."

Also on August 5, 2004, the circuit court entered an order granting the OCP's motion for reconsideration. On the same day, the circuit court also entered an order denying Honolulu University's motion for reconsideration. Honolulu University timely appealed on August 13, 2004.

## II.  *STANDARDS OF REVIEW*

### A.  *Subject Matter Jurisdiction*

■ "The existence of subject matter jurisdiction is a question of law that is reviewable *de novo* under the right/wrong standard." *Aames Funding Corp. v. Mores*, 107 Hawai'i 95, 98, 110 P.3d 1042, 1045 (2005) (internal quotation marks, brackets, and citations omitted).

### B.  *Standing*

■ This court reviews a circuit court's decision regarding a party's standing *de novo* under the right/wrong standard. *Mottl v. Miyahira*, 95 Hawai'i 381, 388, 23 P.3d 716, 723 (2001).

### C.  *Statutory Interpretation*

■ Statutory interpretation is reviewed *de novo* by this court. *Blair v. Ing*, 95 Hawai'i 247, 253, 21 P.3d 452, 458 (2001) (citations omitted).

## III.  *DISCUSSION*

As previously stated, Honolulu University asserts on appeal issues regarding subject matter jurisdiction, standing, *res judicata*, the lack of FOFs and COLs, and constitutional violations, as well as evidentiary matters. Honolulu University also alleges that it was entitled to a plenary, rather than a summary, proceeding. Each of its contentions will be discussed in turn.

### A.  *Subject Matter Jurisdiction*

Honolulu University contends that the circuit court lacked subject matter jurisdiction to entertain the OCP's new complaints, *i.e.,* the six Chinese students' refund requests, brought after entry of the stipulated judgment when there was no order vacating the stipulated judgment. Honolulu University argues that "it is well established that[,] unless the 'vacatur is first granted,' the court would have no jurisdiction to enter any remedial orders in the case." In support of the foregoing contention, Honolulu University relies on *Amantiad v. Odum*, 90 Hawai'i 152, 977 P.2d 160 (1999). The OCP contends that "[c]ourts generally retain jurisdiction with respect to the enforcement of a judgment[.]" Moreover, the OCP argues that the stipulated judgment specifically provided that the circuit court is to retain jurisdiction "for further orders and directions as may be necessary or appropriate to carry out or construe th[e] stipulat[ed judgment]."

In *Amantiad*, the dispositive issue that this court faced was "whether the circuit court lacked jurisdiction to enforce an oral settlement, entered on the record before the circuit court, after all parties stipulated to dismiss with prejudice all claims and parties." 90 Hawai'i at 159, 977 P.2d at 167. In answering the foregoing in the affirmative, this court adopted the Intermediate Court of Appeals' (ICA) analysis in *Gilmartin v. Abastillas*, 10 Haw.App. 283, 869 P.2d 1346 (1994), stating:

> *[A] dismissal of a lawsuit with prejudice* is generally regarded as an adjudication on the merits of all issues that were raised or could have been raised in the pleadings, thus barring, on res judicata grounds, any subsequent litigation involving the same claims, and terminating the trial court's jurisdiction over the lawsuit.
>
> *When an action is dismissed with prejudice* as part of a settlement agreement which is subsequently breached, the trial court thereafter has no jurisdiction to enforce the settlement agreement unless a

party to the agreement takes one of two courses of action.

First, an independent action may be brought for specific performance of the settlement agreement.

Second, a motion to vacate the dismissal order and reopen the original proceedings may be filed. Unless the vacatur is first granted, however, no jurisdiction would exist in the court to enter any remedial orders in the case.

*Amantiad,* 90 Hawai'i at 159, 977 P.2d at 167 (quoting *Gilmartin,* 10 Haw.App. at 288–89, 869 P.2d at 1349–50) (internal citations, brackets, and some emphases omitted) (some emphases added). Inasmuch as the parties in *Amantiad* entered into a stipulation to dismiss with prejudice as to all parties and claims, which was filed with the circuit court, "but no party either (1) moved to vacate the dismissal or (2) instituted a separate action for specific performance of the settlement," *id.* at 160, 977 P.2d at 168, this court held that "the circuit court lacked jurisdiction to enforce the oral settlement entered on the record." *Id.*

■ In the instant case, however, the OCP and Honolulu University did *not* enter into a stipulation to dismiss with prejudice all claims and parties. As such, the circuit court's jurisdiction over the instant action was not terminated, and, therefore, *Amantiad* and *Gilmartin* are distinguishable from this case. Inasmuch as the circuit court had the inherent authority to enforce the stipulated judgment, the circuit court did not lack subject matter jurisdiction to entertain the OCP's motion for relief. *See Jardine v. Jardine,* 918 So.2d 127, 131 (Ala.Civ.App.2005) (holding that "a trial court has the inherent authority to interpret, implement, or enforce its own judgments"); *see also State Personnel Bd. v. Akers,* 797 So.2d 422, 424 (Ala. 2000) (same); *Mulei v. Jet Courier Serv., Inc.,* 860 P.2d 569, 571 (Colo.Ct.App.1993) (same); *Illinois Health Maint. Org. Guar. Ass'n v. Shapo,* 357 Ill.App.3d 122, 292 Ill. Dec. 699, 826 N.E.2d 1135, 1151 (2005) (same); *Lenette Realty & Inv. Co. v. City of Chesterfield,* 35 S.W.3d 399, 408 (Mo.Ct.App. 2000) (same). *Cf. TSA Int'l Ltd. v. Shimizu Corp.,* 92 Hawai'i 243, 265, 990 P.2d 713, 735

(1999) (stating that "the circuit court retains jurisdiction to enforce the judgment" even after the filing of a notice of appeal) (citations omitted).

Moreover, the stipulated judgment specifically provided that the circuit court

*shall retain jurisdiction of this case for the purpose of enabling any of the parties to this stipulation to apply to this court at any time for further orders* and directions *as may be necessary* or appropriate to carry out or construe this stipulation, to modify or terminate any of their provisions, *to enforce compliance, and to punish violations of its provisions.*

(Emphases added.) Consequently, the circuit court retained jurisdiction in order to entertain the OCP's motion for relief, which essentially requested the circuit court to enforce compliance with the stipulated judgment and to penalize Honolulu University for allegedly violating certain provisions of the stipulated judgment. *See Paulucci v. Gen. Dynamics Corp.,* 842 So.2d 797, 803 (Fla. 2003) (holding that, "when a court … approves a settlement agreement by order and retains jurisdiction to enforce its terms, the court has the jurisdiction to enforce the terms of the settlement agreement"); *Cambridge Assocs. v. Town of North Salem,* 228 A.D.2d 537, 644 N.Y.S.2d 775, 776 (N.Y.App. Div.1996) (stating that, inasmuch as the New York Supreme Court "expressly retained jurisdiction over the 'disputes and claims of the respective parties for the purpose of enforcing the provisions of th[e j]udgment' " in a judgment incorporating a settlement agreement, the New York Supreme Court retained jurisdiction over the matter). Thus, the circuit court did not lack subject matter jurisdiction to entertain the OCP's motion for relief.

### B. Standing

■ Honolulu University next contends that the OCP "*lacks statutory standing* to enforce restitution judgment." (Capital letters altered and emphasis added.) Instead, Honolulu University alleges that "[o]nly the actual [c]omplainants[, *i.e.,* the six Chinese students,] have standing and they have to bring enforcement proceedings under his or

her own name." At the same time, however, Honolulu University also alleges that "[t]he OCP *has statutory standing* to seek a judgment for restitution." (Emphasis added.) Although Honolulu University's contentions appear contradictory, it seems to argue that the OCP has standing *to obtain* a judgment for restitution but not *to enforce* a judgment for restitution. Specifically, Honolulu University contends that HRS § 487–14 "is very clear that only the complainants and not the OCP can *elect remedies* because [the] legal consequences of enforcing the restitution judgment procured by the OCP would be to bar the beneficiaries from seeking any other damages in any action on the account of the same acts or practices." (Emphasis added.)

As previously noted, the director of the OCP (the director) is designated the consumer counsel for the State "and shall represent and protect the State, the respective counties, and the general public as consumers." HRS § 487–5. *See supra* note 2. HRS § 487–5(6) provides that the director shall "investigate reported or suspected violations of laws enacted and rules adopted for the purpose of consumer protection and shall enforce such laws and rules by bringing civil actions or proceedings[.]" In bringing such civil actions or proceedings, the director is statutorily authorized to obtain restitution for injured consumers. HRS § 487–14 provides in relevant part:

(a) *In any action brought by the director of the [OCP], the court may include in its orders or judgments such provisions as may be necessary to effect restitution.* Any person in whose favor restitution is ordered need not accept restitution, but the person's acceptance and full performance of restitution shall bar recovery by the person of any other damages in any action on account of the same acts or practices against the person making restitution.

. . . .

(d) *The [OCP] may establish and maintain an account for purposes of holding and disbursing moneys received or recovered by it and which are due consumers as restitution.*

(e) The director of the [OCP] may assign to a consumer for collection that portion of any judgment awarding restitution to that consumer.

(Emphases added.) Indeed, the legislative history behind HRS § 487–14 further confirms that the OCP has standing to obtain restitution on behalf of injured consumers:

[Prior to the enactment of HRS § 487–14], the [OCP][wa]s not specifically authorized to take legal action seeking restitution for consumers who have been damaged by unfair or deceptive business practices. These consumers are often the witnesses for the State in actions filed by the [OCP] to collect civil penalties for violation of consumer protection laws or to enjoin unfair or deceptive business practices. However, upon successful prosecution of the case by the [OCP], the consumers who have experienced losses are left to file their own actions in order to recover their damages. *Your Committee believes that such consumers should have the opportunity to receive restitution without the necessity of filing a separate action.*

*This bill* [, *i.e.*, the bill behind the enactment of HRS § 487–14,] *authorizes the courts to order restitution to consumers in cases filed by the [OCP] to collect civil penalties or enjoin unfair or deceptive business practices.*

Sen. Stand. Comm. Rep. No. 716, in 1975 Senate Journal, at 1104 (emphases added); *see also* Hse. Stand. Comm. Rep. No. 139, in 1975 House Journal, at 983.

As stated *supra*, HRS § 487–14 plainly states that "[a]ny person in whose favor restitution is ordered *need not accept restitution*, but the person's acceptance and full performance of restitution shall bar recovery by the person of any other damages in any action on account of the same acts or practices against the person making restitution." (Emphasis added.) Moreover, the legislative history indicates that "consumers in whose favor restitution is ordered may refuse restitution and file their own actions[,] but acceptance and full performance of restitution bars recovery of further damages by consumers who accept restitution from the person making restitution." Sen. Stand. Comm. Rep.

No. 716, in 1975 Senate Journal, at 1104. As such, the six Chinese students in the instant case are free to either (1) refuse restitution and file their own actions or (2) accept restitution and be precluded from recovering "any other damages in any action on account of the same acts or practices against" Honolulu University. In other words, once the OCP obtained a judgment for restitution on behalf of the six Chinese students, the six Chinese students are entitled to "elect their remedy" by deciding whether to accept or reject restitution. Inasmuch as there is nothing in the record to indicate that *the OCP* is "electing remedies" or is *forcing* the six Chinese students to accept restitution, Honolulu University's argument is without merit.[15]

## C. *Res Judicata*

■ Honolulu University claims that the circuit court erred in entertaining the six Chinese students' refund requests in the OCP's motion for relief inasmuch as the refund requests were barred due to the doctrine of *res judicata*.

HRCP Rule 8(c) (2003) provides that, "[i]n pleading to a preceding pleading, a party shall set forth affirmatively . . . res judicata . . . and any other matter constituting an avoidance or affirmative defense." As such, "[r]es judicata is an affirmative defense which must be pleaded [at the circuit court level]." *In re Keamo*, 3 Haw.App. 360, 363, 650 P.2d 1365, 1368 (1982) (citation omitted). In this case, Honolulu University did not plead *res judicata* as an affirmative defense in its answer nor did it raise the doctrine of *res judicata* during the circuit court proceedings. Consequently, Honolulu University

has waived the affirmative defense of *res judicata*. Inasmuch as Honolulu University raises the doctrine of *res judicata* for the first time on appeal, this court need not address Honolulu University's *res judicata* argument. *See id.* (declining to consider *res judicata* when it was raised for the first time on appeal).

## D. *The Circuit Court's Refusal to Enter FOFs and COLs*

■ Honolulu University alleges that the circuit court "has a duty to enter [FOFs] and [COLs] for those cases which were disposed without a jury." (Capital letters altered.) Honolulu University contends that it had requested the circuit court to enter FOFs and COLs to "itemize" the circuit court's ruling. Honolulu University claims that "[t]here were no [FOFs] that [Honolulu University] had engaged in unfair and deceptive trading practices but awarded the OCP additional civil penalties as well as restitution."

The OCP argues that its motion for relief was not "an action tried upon the facts without a jury or with an advisory jury, the triggering requirement for the application of [HRCP Rule] 52(a)." (Internal quotation marks omitted.) The OCP maintains that, if the circuit court was required to enter FOFs and COLs on its motion for relief, then circuit courts "would have to issue [FOFs] on summary judgment motions, default judgment motions, discovery motions, motions in limine, theoretically virtually every motion heard."

HRCP Rule 52 provides in relevant part:

15. Honolulu University also raises on appeal that, because HRS § 487–14 "requires the [c]omplainants [and] not the OCP to elect their remedies," the complainants are "indispensable parties" to the instant action, and there is an "inadvertent legal consequence of creating a *de facto* attorney-client relationship between the OCP and [the c]omplainants." As stated *infra*, inasmuch as there is nothing in the record to indicate that the OCP is electing the six Chinese students' remedies, Honolulu University's contentions are without merit.

In addition, Honolulu University contends that the OCP "has no standing to sue for unfair or deceptive acts because the OCP or the State of

Hawai'i has not sustained nor ha[s] nexus to any actual injuries." However, HRS § 487–15 (1993), entitled "Injunction," plainly states that "the [OCP] may bring civil proceedings to enjoin any violation of . . . unlawful act or practice affecting consumers, trade, or commerce." Moreover, as stated *supra*, the legislative history behind HRS § 487–14 (relating to restitution) recognizes that the OCP may enjoin unfair or deceptive business practices. *See* Sen. Stand. Comm. Rep. No. 716, in 1975 Senate Journal, at 1104 (recognizing that the OCP may initiate actions in order to enjoin unfair or deceptive business practices). As such, Honolulu University's argument is without merit.

(a) *Effect.* In all actions tried upon the facts without a jury or with an advisory jury, the court shall find the facts specially and state separately its conclusions of law thereon, and judgment shall be entered pursuant to Rule 58[.] Requests for findings are not necessary for purposes of review.... *Findings of fact and conclusions of law are unnecessary on decisions of motions under Rules 12 [ (motions pleading certain defenses) ] or 56 [ (motions for summary judgment) ] or any other motion except as provided in subdivisions (b) and (c) of this rule.*

(b) *Amendment.* Upon motion of a party made not later than 10 days after entry of judgment the court may amend its findings or make additional findings and may amend the judgment accordingly. The motion may be made with a motion for a new trial pursuant to Rule 59....

(c) *Judgment on partial findings.* If during a trial without a jury a party has been fully heard on an issue and the court finds against the party on that issue, the court may enter judgment as a matter of law against that party with respect to a claim or defense that cannot under the controlling law be maintained or defeated without a favorable finding on that issue[.]

(Some emphases in original and some added.) HRCP Rule 52 plainly states that "*[FOFs] and [COLs] are unnecessary on* decisions of motions under Rules 12 or 56 or *any other motion* except as provided in subdivisions (b) and (c) of this rule." (Emphases added.) Inasmuch as the OCP's motion for relief was *a motion* brought pursuant to HRCP Rule 7 (2003)[16] and subdivisions (b) and (c) of HRCP Rule 52 are inapplicable to the instant case, the circuit court was not required to enter FOFs and COLs. Cf. *Citicorp Mortgage, Inc. v. Bartolome,* 94 Hawai'i 422, 440, 16 P.3d 827, 845 (App.2000) (holding that, because "[t]he trial court made its decision on a [HRCP] Rule 60(b) *motion,* ... it was not required to issue [FOFs]") (emphasis in original). Thus, the circuit court did not err in declining to enter FOFs and COLs with respect to the OCP's motion for relief brought pursuant to HRCP Rule 7.

E. *Honolulu University's Remaining Contentions*

Lastly, Honolulu University contends that: (1) it was "entitled to a plenary proceeding rather than [a] summary proceeding;" (2) the circuit court erred by permitting multiple violations of the state and federal constitutions inasmuch as the instant case was a quasi-criminal proceeding; and (3) "there was no evidentiary foundation for the complaints,[17] diplomas, photos, or the VCD[.]"

The OCP contends that, inasmuch as Honolulu University failed to properly preserve the legal issues raised in this appeal, Honolulu University has waived such issues. Specifically, the OCP alleges that none of Honolulu University's points of error were raised in its opposing memorandum to the OCP's motion for relief, but, rather, its points of error were raised improperly in its supplemental memorandum in opposition to the OCP's motion for reconsideration. Because a motion for reconsideration "is not a device to raise arguments that could have been brought earlier[,]" the OCP contends that Honolulu University's arguments are waived.

This court has previously stated that "[t]he purpose of a motion for reconsideration is to allow the parties to present new evidence and/or arguments that could not have been presented during the earlier adjudicated motion." *Amfac, Inc. v. Waikiki Beachcomber Inv. Co.,* 74 Haw. 85, 114, 839 P.2d 10, 27 (1992) (citations omitted). Stated differently, "*[r]econsideration is not a device* to relitigate old matters or *to raise arguments or evidence that could and should have been brought during the earlier proceeding.*"

---

**16.** HRCP Rule 7 provides in pertinent part:

(b) *Motions and other papers.*

(1) An application to the court for an order shall be by motion which, unless made during a hearing or trial, shall be made in writing, shall state with particularity the grounds therefor, and shall set forth the relief or order sought. The requirement of writing is fulfilled if the motion is stated in a written notice of the hearing of the motion.

(Emphasis in original.)

**17.** It appears that Honolulu University refers to the six Chinese students' refund requests made on the OCP's standard complaint forms as the "complaints."

*Sousaris v. Miller,* 92 Hawai'i 505, 513, 993 P.2d 539, 547 (2000) (footnote and citations omitted) (emphases added).

### 1. Honolulu University's "Plenary Proceeding Argument"

■ Honolulu University contends that it raised its plenary proceeding argument in its memorandum in opposition to the OCP's motion for reconsideration. As such, Honolulu University argues that it properly preserved its argument for appeal. A review of Honolulu University's memorandum in opposition to the OCP's motion for reconsideration, however, reveals that Honolulu University did not present *any* argument in support of its alleged entitlement to a plenary proceeding. Although the heading of one of the subsections in Honolulu University's "argument" section is entitled "[The OCP] cannot amend the judgment without an evidentiary hearing[,]" Honolulu University presented no argument to the circuit court as to why an evidentiary hearing was required. Instead, Honolulu University focused its attention on the alleged "fact" that the OCP was "soliciting complaints in order to derive monetary compensation penalties." Because "failure to raise or properly preserve issues at the trial level would be deemed waived[,]" *Enoka v. AIG Hawai'i Ins. Co.,* 109 Hawai'i 537, 546, 128 P.3d 850, 859 (2006) (internal quotation marks and citation omitted), Honolulu University's plenary proceeding argument is waived.

Moreover, Honolulu University's plenary proceeding argument was not in response to any of the arguments raised in the OCP's motion for reconsideration. Furthermore, Honolulu University could and should have raised its plenary proceeding argument in its memorandum in opposition to the OCP's motion for relief or at the hearing on the OCP's motion for relief inasmuch as reconsideration is not a device to raise arguments that could and should have been brought during the earlier proceeding. *Sousaris,* 92 Hawai'i at 513, 993 P.2d 547. Thus, the circuit court did not err in rejecting Honolulu University's plenary proceeding argument.

### 2. Honolulu University's "Quasi–Criminal Proceedings Argument" and Allegations of Constitutional Violations

Honolulu University claims that, in its motion for reconsideration, it "notified its position" to the circuit court that the instant proceeding was "quasi-criminal in nature." Honolulu University concedes that it did not raise any of its eight points of error constituting its allegations of constitutional violations at any point during the circuit court proceedings, but, rather, it maintains that such points of error were "implicitly raised" by the fact that the proceedings were quasi-criminal in nature.

Again, a review of Honolulu University's motion for reconsideration indicates that Honolulu University did not provide *any* argument in support of its allegation that the instant proceeding was quasi-criminal in nature. Instead, Honolulu University merely concluded that "it was clearly established that the action of the [OCP] is in a nature of a quasi-criminal matter requesting the repayment and return of tuition and payments from Honolulu University to the alleged six (6) Chinese students." As previously stated, inasmuch as "failure to raise or properly preserve issues at the trial level would be deemed waived[,]" *Enoka,* 109 Hawai'i at 546, 128 P.3d at 859 (internal quotation marks and citation omitted), Honolulu University essentially waived its quasi-criminal proceedings argument. Moreover, Honolulu University could and should have raised its quasi-criminal proceeding argument in its memorandum in opposition to the OCP's motion for relief or at the hearing on the OCP's motion for relief because, as previously mentioned, reconsideration is not a device to raise arguments that could and should have been brought during the earlier proceeding. *Sousaris,* 92 Hawai'i at 513, 993 P.2d 547. Thus, the circuit court did not err in rejecting Honolulu University's quasi-criminal proceeding argument.[18]

---

**18.** Inasmuch as Honolulu University concedes that its constitutional allegations are essentially derivative to its claim that the instant proceeding was quasi-criminal in nature and that it failed to raise its constitutional allegations at the circuit court level, Honolulu University's arguments

### 3. Honolulu University's Evidentiary Contentions

Honolulu University alleges that it raised its evidentiary contentions, specifically, its concerns over the lack of authentication, regarding the admission of the complaints, diplomas, photos, and the VCD in its motion for reconsideration. As such, Honolulu University claims that it properly preserved its evidentiary arguments for appeal.

As previously mentioned, "[r]econsideration is not a device . . . to raise arguments or evidence that could and should have been brought during the earlier proceeding." *Sousaris,* 92 Hawai'i at 513, 993 P.2d 547 (footnote and citations omitted). Here, Honolulu University could and should have raised its evidentiary contentions either in its memorandum in opposition to the OCP's motion for relief or at the hearing on the OCP's motion for relief.

At the hearing on the OCP's motion for relief, Honolulu University's main contention with respect to the complaints was that they were not "certified," and, thus, Honolulu University could not determine whether the six Chinese students were aware that Honolulu University was unaccredited. However, as the circuit judge correctly noted, the students' knowledge regarding Honolulu University's lack of accreditation was *not* relevant to Honolulu University's obligation to make restitution pursuant to the stipulated judgment. On appeal, Honolulu University's main contentions with respect to the complaints is that there was no proof that the complaints were properly translated (from Chinese to English), that the six Chinese students understood English, and that the complaints were hearsay. As such, Honolulu University essentially raises different objections on appeal from the objections raised to the circuit judge at the hearing. Because Honolulu University did not properly preserve its objections it now raises on appeal and it improperly raised such objections for the first time on reconsideration when it could have raised its objections earlier, Honolulu University's contention with respect to

the admission of the complaints is without merit.

Also at the hearing, Honolulu University did not raise any objections when the circuit judge reviewed the original diplomas:

THE COURT: Where are those degrees?

What exhibit are some of the sample degrees, your degrees actually attached to, Mr. Brunton [ (counsel for the OCP) ]?

Oh, here it is. Exhibit 5.

[THE OCP'S COUNSEL]: I have the originals with me, Your Honor, if the [c]ourt would like to look at one of the actual—

THE COURT: I would actually like to see one of the original degrees that's been conferred by Honolulu University.

[THE OCP's COUNSEL]: There is a degree in there, and they were also conferred a certificate of graduation.

THE COURT: Certificate of Graduation, Master of Business Administration.

The degree of master of business administration with all of—all the rights, privileges, and honors hereunto appertaining, in testimony whereof we have subscribed our names and affixed the seal of this university in Honolulu, Hawai'i, U.S.A.

And it says the Regents, of Honolulu University, on the recommendation of the faculty and by the virtue of the authority in them vested by the State of Hawai'i hereby confer upon this person the degree of master of business administration.

And you were basically conceding that your client[, *i.e.,* Honolulu University,] never conducted any courses here in Honolulu or did any work. It just got a little bit of payment for conferring these degrees. Okay?

*Any additional arguments, Mr. Shigemura* [ (counsel for Honolulu University) ]?

[HONOLULU UNIVERSITY'S COUNSEL]: *None, Your Honor.*

(Emphases added.) Inasmuch as Honolulu University did not raise any evidentiary ob-

---

with respect to alleged constitutional violations are waived. *See Enoka,* 109 Hawai'i at 546, 128 P.3d at 859 ("[F]ailure to raise or properly pre-

serve issues at the trial level would be deemed waived." (Internal quotation marks and citation omitted.)).

**520**

jections in its memorandum in opposition to the OCP's motion for relief or at the hearing on the OCP's motion for relief when it had the opportunity to do so, Honolulu University improperly raised such arguments for the first time in its motion for reconsideration.

In addition, with respect to Honolulu University's objections regarding the admission of the photos and the VCD, it appears that the circuit court did not even consider the foregoing evidence when it decided the OCP's motion for relief nor was such evidence necessary in order for the circuit court to rule on the OCP's motion for relief. As previously stated, the stipulated judgment provided in relevant part that "[Honolulu University] shall provide a full refund to any degree holders and degree applicants who enrolled by, in or through any of its foreign agents, *conditioned on the return of any diploma awarded.*" (Emphasis added.) Inasmuch as the stipulated judgment only required that *the diploma* be returned in order to receive a full refund from Honolulu University, the OCP was not required to attach the photos and the VCD in support of its motion for relief. Moreover, at the hearing on the OCP's motion for relief, the circuit judge indicated that the VCD was not necessary in order to rule on the OCP's motion for relief:

> [COUNSEL FOR THE OCP]: One more thing if I might. We submitted a video, home—a video disc, VCD, which contains a home movie of these people requesting a refund, redundant to the photographic evidence which was attached. But we have located a state laptop which is capable of opening those discs and playing them. If the [c]ourt would like that, we're willing to leave the laptop here.
>
> [THE COURT]: I actually have a laptop provided by the State so I will view it, *although it's not necessary to my judgment.* And also I'm very concerned that these types of activities not continue.

(Emphasis added.) As such, Honolulu University's contentions with respect to the admission of the photos and the VCD are without merit. Thus, the circuit court did not err in rejecting Honolulu University's evidentiary contentions.

## IV. CONCLUSION

Based on the foregoing, we affirm the circuit court's August 5, 2004 amended judgment.